[Civ. No. 14434. Third Dist. June 6, 1975.]

DIXON MOBILE HOMES, INC.,
Plaintiff, Cross-defendant and Appellant, v.
HAROLD L. WALTERS, Defendant,
Cross-complainant and Appellant.

**COUNSEL**

Baird B. McKnight for Plaintiff, Cross-defendant and Appellant.

Dennis B. Kavanagh for Defendant, Cross-complainant and Appellant.

**OPINION**

**EVANS, J.**—Plaintiff and cross-defendant (hereafter appellant) appeals from an adverse judgment in favor of defendant and cross-complainant (hereafter respondent). The trial of the action was bifurcated; the court

without a jury considered the question of whether to apply Nevada or California law, and a jury thereafter heard evidence and rendered a verdict on appellant's complaint for recovery of personal property and damages and respondent's cross-complaint seeking rescission, restitution, and compensatory and exemplary damages. The trial court ruled that California law, specifically sections 2981 to 2984.4 of the Civil Code and the Rees-Levering Act, was applicable to the disputed transaction. After applying the Rees-Levering Act, the court, on respondent's claim for rescission, awarded judgment for him in the amount of $7,339.70, attorney's fees in the sum of $750, court costs of $595.50, and possession of the mobile home to appellant.

The jury thereafter awarded respondent $2,320 compensatory damages and $2,500 punitive damages.

The trial court made appropriate findings of fact and conclusions of law, and entered judgment against appellant accordingly. ■ The appeal comes to us on the clerk's transcript only. On such an appeal, the findings are not subject to challenge, and it must be presumed that the evidence supports the findings. (*Associated Creditors' Agency* v. *Dunning Floor Covering, Inc.* (1968) 265 Cal.App.2d 558, 559 [71 Cal.Rptr. 494]; *Globe Indem. Co.* v. *State of California* (1974) 43 Cal.App.3d 745 [118 Cal.Rptr. 75].) We are thus limited to a review of the judgment, the findings of fact and conclusions of law, and the pleadings. (*Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 226 [69 Cal.Rptr. 251].)

The undisputed facts as disclosed by the clerk's transcript indicate that respondent was a resident of California, and appellant corporation was a mobile home dealer with its principal place of business in the State of Nevada. In March of 1967, in Nevada, respondent entered into a purchase order agreement with appellant for the purchase of a mobile home. The agreement provided for payment of California sales tax, licensing and registration fees. The financing provisions of the purchase order document were left blank, and failed to contain the warnings and statement of buyer's rights and liabilities required by subsection 10 of subdivision (a) of section 2982 of the California Civil Code.[1]

---

[1]The Rees-Levering Act reads in part (Civ. Code, § 2982, subd. (a), subsec. 10):

"(a) Every conditional sale contract for the sale of a motor vehicle, with or without accessories, shall be in writing and, if printed, shall be printed in type no smaller than six point, and shall contain in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or any other evidences of indebtedness. The conditional

In May 1967, respondent and appellant executed a conditional sales contract for the actual purchase of the mobile home. The contract form was signed in blank by respondent, and he did not receive a copy of the document. The conditional sales contract failed to contain the warning language required by subsection 10 of subdivision (a) of section 2982 of the Civil Code. Appellant agreed to deliver and place the mobile home on respondent's property in Blairsden, California. The delivery and installation were accomplished. Respondent thereafter made payments on the contract by mail from California. A number of the payments were late but accepted until March 1971. At that time agents and employees of appellant, without permission of respondent, entered on respondent's property in California, intending to repossess the mobile home. They made forcible entry into the home, split it, and in the process drove trucks and other heavy vehicles upon the respondent's property, causing substantial damage. Respondent arrived at his home during the attempted repossession process and ordered the appellant's employees and agents to leave without the mobile home. They complied. Appellant thereafter filed a complaint for claim and delivery in Plumas County to recover possession of the mobile home and for a deficiency judgment. Respondent answered and cross-complained for trespass to chattel and real property, forcible entry and detainer, conversion, misrepresentation, fraud, and violation of the California Rees-Levering Act requiring rescission and restitution. (Fn. 1, *ante,* pp. 967-968.)

On appeal, appellant contends (1) the court erred in applying California law to the disputed contract; (2) the conditional sales contract

---

sale contract or a purchase order shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and an exact copy thereof shall be furnished the buyer by the seller at the time the buyer and the seller have signed the contract or purchase order. No motor vehicle shall be delivered under this chapter until the seller delivers to the buyer a fully executed copy of the conditional sale contract or purchase order and any vehicle purchase proposal and any credit statement which the seller has required or requested the buyer to sign, and which he has signed, during the contract negotiations. The *seller shall not obtain the signature of the buyer to a contract when it contains blank spaces to be filled in after it has been signed.* Every conditional sale contract shall contain, although not necessarily in the sequence or order set forth below, the following separate items:

" . . . . . . . . . . . .

"7. The amount of the finance charge.

" . . . . . . . . . . . .

"10. A notice, in at least eight-point bold type if the contract is printed, reading as follows: 'Notice to the buyer: (1) Do not sign this agreement before you read it or if it contains any blank space to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.' " (Italics added.)

executed in May 1967 was, in fact, a novation of the earlier March purchase agreement; (3) punitive damages were improperly awarded; (4) the record does not support the award of compensatory damages; and (5) attorney's fees were erroneously awarded.

Inasmuch as this is an appeal taken on the clerk's transcript, we may dispose of appellant's novation, punitive damage, and compensatory damage contentions summarily. Each of those asserted grounds for reversal involves issues requiring evidentiary review. It is elemental that on a judgment roll appeal, the appellate court must conclusively presume that the evidence is sufficient to sustain the findings, and that the only questions presented are as to the sufficiency of the pleadings and whether the findings support the judgment. (*Millbrae Assn. for Residential Survival* v. *City of Millbrae, supra,* 262 Cal.App.2d 222; *City of Los Angeles* v. *Ricards* (1973) 10 Cal.3d 385, 390 [110 Cal.Rptr. 489, 515 P.2d 585]; *Bristow* v. *Morelli* (1969) 270 Cal.App.2d 894, 898 [76 Cal.Rptr. 203].) The court in *Kompf* v. *Morrison* (1946) 73 Cal.App.2d 284, 288 [166 P.2d 350], on a judgment roll appeal dealing with similar contentions stated, "Grave miscarriages of justice would result if an appellant was permitted to argue factual questions on such an appeal." Each of the mentioned contentions requires a review of the facts presented if a determination contrary to the trial court's is to be made. The contentions accordingly are rejected.

Attorney's fees were awarded respondent pursuant to the provisions of the California Rees-Levering Act. (Fn. 1, *ante,* pp. 967-968.) Their propriety is dependent upon the resolution of plaintiff's principal contention that the court erred in applying California law to the contract.

## CHOICE OF LAW

■ Respondent argues that inasmuch as we are considering a judgment roll appeal, we are precluded from deciding the conflict of law issue as well as the others. The argument is without merit. Choice of law cases must be decided by considering factors or contacts with the states involved; in this case, all of those factors or contacts are a part of the clerk's transcript which contains the findings of fact.[2] (*Bernkrant* v. *Fowler* (1961) 55 Cal.2d 588 [12 Cal.Rptr. 266, 360 P.2d 906].)

---

[2] FINDINGS OF FACTS
"I
"That the law of the State of California applies in the case, and in particular, that Civil Code sections 2981 through 2984.4 are applicable to the transactions in issue involving

Respondent at all times pertinent was a resident of California; appellant was incorporated in and had its principal place of business in Nevada; the contracts were signed in Nevada; respondent made payments by mail from California to Nevada; and the appellant delivered the mobile home to respondent in California. The court, after considering these factors, applied the California Rees-Levering Act to the sale of the mobile home.

the sale and purchase of a mobile home.

"II

"That on March 4, 1967 Harold Walters and Dixon Mobile Homes, Inc. (hereinafter referred to as Walters and Dixon) entered into a 'purchase order' agreement for the purchase of a mobile home. Said document is 'Walter's Exhibit C in evidence'. That the 'purchase order' under section 2981 (K) and 2982 (a) failed to comply in the following respects:

"(1) The finance charge box on the 'purchase order' document was blank. The finance charge was $5322.00. This is a violation of section 2982.(a) (7).

"(2) The language required by section 2982(a) (10) was missing from the document. Said language reads as follows: [¶] A notice, in at least eight-point bold type if the contract is printed, reading as follows: 'Notice to the buyer:

"(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) Your [sic] are entitled to a completely filled-in copy of this agreement.

"(3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.'

"III

"That on May 4, 1967 Walters and Dixon entered into a conditional sales contract for the purchase of the mobile home in issue. This document, as an original and three copies, is in evidence as 'plaintiff's exhibit one' and as 'Walters exhibits A and B', and the copy entitled 'customer copy' is part of the Court file as 'Exhibit A' of the original complaint.

"The May 4, 1967 document failed to comply with section 2982 (a) in the following respects:

"(1) Walters did not receive a copy of the contract at the time it was signed by him.

"(2) The contract was signed by Walters in blank.

"(3) The language required by section 2982 (a) (10) was missing from the document. The text of the language as set forth in Finding II (2) is herein incorporated by reference.

"IV

"That Dixon under the provisions of section 2984 never corrected either the March 4, 1967 or May 4, 1967 documents.

"V

"That all violations of section 2982 as set forth in Findings II and III in relation to the March 4, 1967 and May 4, 1967 documents by Dixon were wilful.

"VI

"That Walters is entitled to relief under section 2983 or 2983.1, or both, in the following respects:

"(1) That as set forth in Findings II and III Dixon has violated section 2982 (a).

"(2) That the conditional sale contract between Dixon and Walters is not enforceable as per sections 2983 or 2983.1, or both, and that Walters is entitled to restitution of the total amount he has paid. To wit: $7339.70 plus attorneys fees of $750.00.

"VII

"That Dixon take nothing on its complaint and action against Walters."

Section 97.175 et seq., of the Nevada Revised Statutes[3] are also regulatory of transactions of the type involved. However, they do not provide the specific remedies of the Rees-Levering Act. The Rees-Levering Act, designed to protect buyers from abusive and unethical practices of motor vehicle sellers and dealers, goes further and provides the relief of restitution and rescission to the purchaser.

The Legislature is ordinarily concerned with enacting laws to govern purely local transactions. In this instance it has not defined the extent to which the Rees-Levering Act is to apply to contracts having substantial contacts with other states. Accordingly, the scope of the act must be

---

[3]Nevada Revised Statute reads as follows:

"97.175 Seller to deliver, mail copy of contract to buyer; buyer's acknowledgment of delivery. *The retail seller shall deliver to the retail buyer, or mail to him at his address shown on the retail installment contract, a copy of the contract as accepted by the seller, prior to the due date of the first installment.* Until the seller does so the buyer shall be obligated to pay only the cash sales price. Any acknowledgment by the buyer of delivery of a copy of the contract shall be in a size equal to at least 10-point bold type and, if contained in the contract, shall appear directly above the buyer's signature.

"(Added to NRS by 1965, 659)

"97.185 Contents of contract.

"1. The retail installment contract shall contain the names of the seller and the buyer, the place of business of the seller, the residence or other address of the buyer as specified by the buyer and a description or identification of the goods sold or to be sold, or services furnished or rendered or to be furnished or rendered. *The contract also shall contain the following items, which shall be set forth substantially in the sequence appearing below:*

"(a) The cash sale price of each item of goods or services.

"(b) The amount of the buyer's down payment, identifying the amounts paid in money and allowed for goods traded in.

"(c) The difference between paragraphs (a) and (b).

"(d) The aggregate amount, if any, included for insurance, specifying the type or types of insurance and the terms of coverage.

"(e) The aggregate amount of official fees.

"(f) The initial balance, which is the sum of paragraphs (c), (d) and (e).

"(g) *The amount of the time price differential.*

"(h) *The amount of the time balance owed by the buyer to the seller, which is the sum of paragraphs (f) and (g).*

"(i) The number of installments required to pay the time balance, the amount of each installment, and the date for payment of the installments. If the final payment substantially exceeds the other scheduled installments, it shall be set forth separately.

"2. Additional items may be included in the contract to explain the calculations involved in determining the amount to be paid by the buyer.

"(Added to NRS by 1965, 659)

" . . . . . . . . . . . . . . .

"97.215 *Blank* spaces in contracts. *The seller shall not obtain the signature of the buyer to any contract when it contains blank spaces of items which are essential provisions of the transaction* except as provided in NRS 97.205 and 97.235, and except that if delivery of the goods is not made at the time of the execution of the contract, the identifying numbers or marks of the goods or similar information and the due date of the first installment may be inserted by the seller in the seller's counterpart of the contract after it has been signed by the buyer.

"(Added to NRS by 1965, 660)" (Italics added.)

determined in the light of applicable principles of conflict of law decisions. (*Bernkrant* v. *Fowler, supra,* 55 Cal.2d 588, 594.) The factual situation presented is complex, involving multi-state contacts. In such situations, no single state alone can be deemed to have the exclusive governing rights. (*Reich* v. *Purcell* (1967) 67 Cal.2d 551, 553 [63 Cal.Rptr. 31, 432 P.2d 727].) ■ In recognition of this principle, California now follows a methodology characterized as the "governmental interest" approach to choice of law problems. (*Kasel* v. *Remington Arms Co.* (1972) 24 Cal.App.3d 711, 730 [101 Cal.Rptr. 314].) Applying this method, the forum must search to find the proper law to apply based upon the interests of the litigants and the involved states. (*Reich* v. *Purcell; supra,* at p. 553.) With the governmental interest approach, "relevant contacts" stressed by the Restatement Second of Conflict of Laws[4] are not disregarded, but are examined in connection with the analysis of the interest of the involved state in the issues, the character of the contract and the relevant purposes of the contract law under consideration. (*Kasel* v. *Remington Arms Co., supra,* 24 Cal.App.3d at p. 731.) The forum must consider all the foreign and domestic elements and interests involved in the case to determine the applicable rule. (*Reich* v. *Purcell, supra,* 67 Cal.2d at p. 555.) ■ As we view the application of the foregoing guidelines to the issues presented, it is clear the trial court correctly applied California rather than Nevada law. The protection of California consumers from abusive and deceptive sellers, whether local or foreign, is an important subject for protection by California. The California consumer is harmed as much by either one. California has expressed this interest through the adoption of the Rees-Levering Act to specifically prevent fraudulent and deceptive practices in the conditional sales of motor vehicles.

California, as the forum, has a special interest in having its own law apply. ■ The law of the forum will be displaced only if there is a compelling reason for doing so. It is applicable unless either the

---

[4]Section 188 of Restatement Second of Conflict of Laws reads as follows:

"(1) . . . . . . . . . . . . . . . .

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

appellant or respondent has been forced into a forum devoid of such contact as would justify application of its own law. (*Kasel* v. *Remington Arms Co., supra,* 24 Cal.App.3d at p. 731.) ■ Here, in addition to being the residence of the buyer, the following additional California contacts are present: the buyer initiated his payments in California; the seller delivered and installed the mobile home in California; the loan was secured by California property; and all acts relating to breach (attempted repossession and collection) occurred in California. It is apparent from the findings that California had substantial contacts totally justifying the application of California law.

It is equally clear that Nevada does not have an interest in having its law applied. It may be assumed that Nevada could have a policy of protecting its sellers from having contracts invalidated by the various laws of the several states. However, as indicated, Nevada and California policies are not in conflict. (Fn. 1, *ante,* pp. 967-968 and fn. 3, *ante,* p. 971.) Nevada's interest is similar to California's. The practices utilized by appellant are controlled and penalized by both states. The contract involved did not meet the requirements of either Nevada or California law. The court in *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666] commented as follows: "Although the two potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied. [Citations.] 'When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, then there is no real problem; clearly the law of the interested state should be applied.' [Citation.]"

We find no interest needing the protection of the Nevada laws and conclude the court properly made a choice of law in applying the Rees-Levering Act.

Having so concluded, we can dispose of appellant's contention that attorney's fees were erroneously awarded. The Rees-Levering Act specifically provides for the award of reasonable attorney's fees and costs to the prevailing party in any action on a conditional sales contract subject to provisions of the act.[5]

---

[5]Section 2983.4 of the Civil Code provides in pertinent part: "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a conditional sale contract subject to the provisions of this chapter regardless of whether the action is instituted by the seller, holder or buyer."

## INTEREST

Respondent has cross-appealed from the trial court's failure to award any interest on the judgment. ■ The cross-complaint sought interest generally, and respondent now seeks interest on payments made on the mobile home from the date of each payment pursuant to section 3288 of the Civil Code.[6] By its terms, section 3288 limits the award of interest to cases of fraud, oppression, or malice and vests the discretion for such award in the jury. The court failed to instruct the jury on its ability to award interest on the compensatory damage award. However, in the absence of a specific request from a party, the court is under no duty to give such instructions. (*Gagosian* v. *Burdick's Television & Appliances* (1967) 254 Cal.App.2d 316, 318 [62 Cal.Rptr. 70]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 195, p. 3014.) We find no such request by the respondent on the question of discretionary interest. Respondent's contention made under the color of section 3288 of the Civil Code is therefore rejected.

■ With respect to general interest on the damage award, liability for interest is to be determined by the law of the forum. (*Perkins* v. *Benguet Cons. Min. Co.* (1942) 55 Cal.App.2d 720 [132 P.2d 70].)

Section 1033 of the Code of Civil Procedure provides in relevant part: "The clerk or judge shall include in the judgment, or any part of a judgment, entered up by him based upon a cause of action in contract where the claim was unliquidated, interest on the verdict or decision of the court from the date prior to the entry of judgment as may have been fixed by the court pursuant to subdivision (b) of Section 3287 of the Civil Code, and the costs, if the same have been taxed or ascertained. In any other case, and where the court determines that interest should not be recovered from a date prior to the entry of judgment under subdivision (b) of Section 3287 of the Civil Code, the clerk or judge shall include in the judgment entered up by him, any interest on the verdict or decision of the court, from the time it was rendered or made, and the costs, if the same have been taxed or ascertained."

Section 3287 of the Civil Code provides:

"(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover

---

[6] Section 3288 of the Civil Code provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."

which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, . . .

"(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

■  Applying these sections, whether or not interest is included in the damage award (either by the court or by the jury), the award must bear interest at the legal rate during the period following rendition of the verdict or decision and until entry of judgment. (*Espinoza* v. *Rossini* (1967) 257 Cal.App.2d 567, 569 [65 Cal.Rptr. 110]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 136, p. 3284.) Thereafter, any final judgment for money bears interest at the legal rate from the date of entry. This is so regardless of whether or not the original claim was liquidated or unliquidated, in contract or in tort. (*County of Los Angeles* v. *Lorbeer* (1958) 158 Cal.App.2d 804, 809 [323 P.2d 542]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 137, p. 3285.) Interest also continues during an appeal. (*Espinoza* v. *Rossini, supra,* 257 Cal.App.2d at p. 569.)

Respondent is entitled to have interest for the seven-month period between verdict and judgment, and interest thereafter until satisfaction of the judgment.

The judgment is affirmed and remanded with the direction that interest consistent with this opinion be made a part of the judgment.

Regan, Acting P. J., and Paras, J., concurred.