[Civ. No. 18647. Fourth Dist., Div. One. Feb. 21, 1980.]

ROBERT McMULLAN & SON, INC., Plaintiff and Appellant, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant and Respondent.

COUNSEL

Hillyer & Irwin and Margaret Z. Johns for Plaintiff and Appellant.

Stephen R. Mulligan and Diana Myers for Defendant and Respondent.

OPINION

**STANIFORTH, J.**—The single issue presented by the Robert McMullan & Son, Inc.'s (McMullan's) appeal is the propriety of the trial court's refusal to award McMullan attorney fees in this declaratory relief action successfully brought by McMullan against its insurance carrier, United States Fidelity and Guaranty Company (Fidelity), a Maryland corporation, by reason of the insurer's wrongful withdrawal from the defense of an action brought against McMullan in the State of Florida.

FACTS

Robert McMullan & Son, Inc., is a California corporation. It purchased a comprehensive general liability insurance policy from Fidelity in 1972 and again in 1976. The insurance contracts were purchased, issued and delivered in San Diego from insurance brokers in San Diego who, as authorized agents of Fidelity, countersigned the policies at time

of issuance. McMullan by subcontract agreed to perform painting work in various structures at Sea World, Orlando, Florida. At McMullan's request, Fidelity executed and provided certificates of insurance showing coverage for McMullan's work at the Florida project. Based upon an audit of the McMullan business activities, McMullan paid Fidelity a premium for the coverage on the Sea World project.

After completion of the work required of McMullan, Sea World sued McMullan in Orange County, Florida, alleging defects in performance. After notification, Fidelity undertook the defense of the Florida action, but later determined there was no coverage and withdrew from defense of the suit. These decisions were made by the Orlando, Florida, office of Fidelity with approval of its home office in Baltimore, Maryland. McMullan assumed the defense of the Florida action and filed this cause for declaratory relief in the San Diego Superior Court. The trial court here granted McMullan's motion for partial summary judgment, decreeing Fidelity had the duty to defend the Florida action. Fidelity then assumed the defense and the lawsuit was settled.

After the granting of the motion for partial summary judgment, the sole issue remaining to be litigated was McMullan's request for attorney fees for prosecuting this declaratory relief action against Fidelity. The trial court held California law applied, reasoning "the law simply is that where an insurance contract does not specify the place of performance and [this] one did not despite the fact there may have been some understanding as to where work was going to be performed, the place where the contract was entered into is the place as the law governs and there is no doubt that the policies were delivered to McMullan in California and the premiums were paid in San Diego and brokerage firms representing USF and G in San Francisco and a San Diego brokerage firm and California is in my opinion the state that has the most significant relationship with the—if we were to go into some of the broader aspects of conflicts such as the many astute treatises by Justice Traynor and others." And the court cited *Wheeling* v. *Financial Indemnity Co.* (1962) 201 Cal.App.2d 36, 40 [19 Cal.Rptr. 879], as "squarely in point." Based upon California law, the court denied the claim for attorney fees. This appeal followed.

CONTENTIONS

McMullan contends the trial court erred in applying the law of place of making of the policy and in its refusal to "undertake the required

analysis of interests of the involved states." McMullan contends the trial court's approach was clearly contrary to modern conflicts of law principles that mandate a "governmental interest analysis." McMullan asserts because the facts encompass multistate contracts, there is a conflict of law question.

## DISCUSSION

### I

The point of beginning in analysis of McMullan's contentions was succinctly described in *Hurtado* v. *Superior Court* (1974) 11 Cal. 3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666]: "The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical." (*Id.*, at p. 580; see also *Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 518 [132 Cal.Rptr. 54].)

Thus the threshold question is whether *there is a conflict* between the laws of California and Florida and Maryland on the precise issue here. California law does not authorize recovery of attorney fees in the case at bench. (See *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 302 [54 Cal.Rptr. 116, 419 P.2d 180]; *Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 317 [85 Cal.Rptr. 665]; Code Civ. Proc., § 1021.) This rule is conceded by McMullan.

### II

Florida Insurance Code section 627.428, subdivision (1) does allow recovery of attorney fees in certain cases involving insurance policies sued upon in the State of Florida. This rule is subject to the qualifications imposed by section 627.401 of the Florida Insurance Code which provides: "No provision of part II of this Chapter [which includes § 627.428] shall apply as to: . . . (2) Policies or contracts not issued for delivery in this state nor delivered in this state. . . ."

The Supreme Court of Florida interpreted Florida Insurance Code section 627.428 (formerly § 627.0127) in the case of *Pan-American Life Insurance Company* v. *Diaz* (Fla. 1975) 322 So.2d 549, holding: "'With certain exceptions not pertinent here, Section 627.0127, F.S. 1969, F.S.A., [now Section 627.428] does not apply to an insurance

contract which like the one here involved was neither issued for delivery in Florida nor delivered in this state.'" (*Id.*, at p. 551.) In attempted avoidance of the foregoing rules, McMullan cites Florida Insurance Code section 627.402, defining the term "policy" within the context of Florida Insurance Code section 627.428. McMullan asserts the definition includes an insurance broker's "certificate" verifying or acknowledging insurance coverage such as McMullan was required to furnish under its subcontract with the general contractor.

Florida Insurance Code section 627.402 states: "(1) 'Policy' means written contract or *written agreement for or effecting insurance* [italics added], or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers which are a part thereof." The key words in this definition are *"for or effecting insurance."* The certificate given by McMullan's insurance broker to McMullan was not issued "for or effecting insurance." It was not the contract of insurance; rather it was a statement issued by the insured's broker, verifying or acknowledging the then existence of a previously issued policy of insurance and an assurance that "the policies will not be cancelled" without notice. The certificate is "proof of insurance," not "an agreement for or effecting insurance." We conclude the law of Florida is the same as California in this matter. It does not authorize the recovery of attorney fees by McMullan.

### III

Maryland is the state of Fidelity's residence and the state where the decision to breach, the refusal to defend, occurred—at least in part. Maryland has no statutory law on this subject. McMullan, however, cites Maryland cases in which Maryland residents have recovered attorney fees expended in suits against insurance companies. Each of these cases involved contracts of insurance which were issued and delivered in Maryland to Maryland residents who chose to sue in Maryland courts. These decisions when limited to their particular fact are readily distinguishable. The policies here were not issued or delivered in Maryland. McMullan is not a Maryland resident. He seeks no aid from a Maryland court.

Maryland law, however, is clear on this further point and was summarized in *Riviera Beach Vol. F. Co., Inc.* v. *Fidelity & C. Co. of N. Y.* (D.Md. 1975) 388 F.Supp. 1114, 1119-1120: "In Maryland it is well established that 'the law of the place of contracting determines the

validity and effect of a promise with respect to the nature and extent of the duty for the performance of which a party becomes bound.' [Citation.] Furthermore, the Court of Appeals of Maryland has stated that '[t]he *locus contractus* is the place where the last act is performed which makes an agreement a binding contract.' [Citations.] Thus, where the contract of insurance provides, as it does in the instant case, that it shall not be binding until countersigned by a duly authorized representative of the insurance company, the place of countersigning is the place of the making of the contract. [Citations.]"

Here the last act in the contracting process, the countersigning by a Fidelity agent and delivery of the policies took place in San Diego, California. Thus Maryland law selects, designates California laws for the determination of the validity and effect of the provisions contained in the policies in issue here. There appears to be no conflict on the precise rule of law in issue.

IV

■ If we assume, contrary to the foregoing conclusion, that a conflict does in fact exist between the law of California and that of Florida or Maryland, then a "governmental interest" analysis is necessary. In *Dixon Mobile Homes, Inc.* v. *Walters* (1975) 48 Cal.App.3d 964 [122 Cal.Rptr. 202], there was a choice of law question in a contract action. ■ The appeal court aptly described the correct analytic process: "California now follows a methodology characterized as the 'governmental interest' approach to choice of law problems. [Citation.] Applying this method, the forum must search to find the proper law to apply based upon the interests of the litigants and the involved states. [Citation.] With the governmental interest approach, 'relevant contacts' stressed by the Restatement Second of Conflict of Laws [fn. omitted] are not disregarded, but are examined in connection with the analysis of the interest of the involved state in the issues, the character of the contract and the relevant purposes of the contract law under consideration." (*Id.*, at p. 972.)

The *Dixon* court enumerates these "relevant contacts" for contract issues: "(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties." (*Dixon, supra*, at p. 972, fn. 4.)

 McMullan contends the trial court applied the wrong analytical theory in reaching its decision because the judge stated "California is in my opinion the state that has the most significant relationship with the [case]. . . ." *Dixon, supra*, indicates that relevant contacts are not to be disregarded, but rather examined in connection with certain prescribed interests, namely the interest of the involved state in the issues, the character of the contract, and the relevant purposes of the contract law under consideration. (See *Dixon, supra*, at p. 972.)

The trial court made just such an examination of the relevant issues as outlined by *Dixon, supra*, and concluded that the interests of California were the most significant. California, not Florida or Maryland, was the place of contracting, the place of negotiation of the contracts. The place of performance was not specified, yet McMullan was a resident of California and Fidelity a resident of Maryland, and Fidelity did business in California. The Fidelity contacts with Maryland were not significant with respect to these contracts since Fidelity did business on a national scale. Fidelity knowingly dealt with residents of the various states and voluntarily subjected itself to the contract laws of those states.

Moreover, California has many interests in having its law applied in this case. California is the forum state. Since the contract was made between a California resident and a corporation doing business in California, California has an interest in seeing that such contract is enforced according to the law where it was made.

A significant basis of a contract bargain is knowing the measure of the damages on breach of the contract. A foreseeable measure of damages is part of the risk involved, and in the business world, reflected in the contract price. California has an interest in assuring those who elect to contract in California and avail themselves of California laws that these laws will be applied to ensure this foreseeability. Thus California

has an interest in seeing that those electing to contract in California receive the benefit of their bargain.

McMullan's contention that California has no interest in applying its law here because Fidelity is not a resident defendant overlooks the fact that the California rule that attorney fees will not be awarded in this species of contests has been applied in at least three cases where nonresident defendant insurance companies were directly benefited. Hanover Insurance Company in the case of *Carroll* v. *Hanover Insurance Co.* (1968) 266 Cal.App.2d 47 [71 Cal.Rptr. 868], was a New Hampshire corporation; Maryland Casualty Co. in the case of *Lowell* v. *Maryland Casualty Co., supra*, 65 Cal.2d 298, as its name implies, was a Maryland corporation; and Insurance Company of North America in the case of *Patterson* v. *Insurance Co. of North America, supra*, 6 Cal. App.3d 310, was a Pennsylvania corporation. The application of the California law directly benefits those nonresident insurance companies. The fact of incorporation in another state or, because the "home office" has final say on all policy decisions, or that the decision to withdraw from the defense of an insured may have been partly reached by home office personnel in the incorporation state, had little to no relevance in determining which forum's law to apply in this case.

McMullan next contends that Florida as well as Maryland has a compelling interest in deterring wrongful conduct, within its borders. This is not a proper area of inquiry for this is a contract damage suit, not a tort action. If it were germane, it would not necessitate the application of Florida or Maryland law for California also has the same policy of deterring wrongful refusal to defend and indemnify under an insurance policy. The trial court partial summary judgment exemplified this law in action.

We conclude the trial court followed the correct methodology and applied the correct rules of law in finding California the forum state, the only state with any relevant or compelling interest in having its law apply to the issue at bench.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1980.