NATIONAL SEMICONDUCTOR
CORPORATION, Plaintiff,

v.

ALLENDALE MUTUAL INSURANCE
COMPANY, Defendant.

Civ. A. No. B–80–125.

United States District Court,
D. Connecticut.

Oct. 22, 1982.

William H. Narwold, Cummings & Lockwood, Stamford, Conn., for plaintiff.

Robert M. Wattson, Robins, Davis & Lyons, Minneapolis, Minn., Shaun S. Sullivan, Wiggin & Dana, New Haven, Conn., for defendant.

### RULING ON DEFENDANT'S MOTION IN LIMINE

ZAMPANO, District Judge.

In this action plaintiff, National Semiconductor Corporation, ("National") seeks to recover damages under the provisions of an insurance policy issued by defendant, Allendale Mutual Insurance Company, ("Allendale"). National is a Delaware corporation with its principal place of business in Santa Clara, California. Allendale is incorporated and maintains its principal place of business in Rhode Island. Among other states, it conducts insurance business in California.

The contract of insurance between the parties, effective during the period April 1, 1977 to April 1, 1980, provided protection inter alia for National's business interruption losses caused by an accident at any of its manufacturing plants located in various states. In October 1978, poisonous gases were released on two occasions from machinery in plaintiff's factory situated in Danbury, Connecticut.

National contends these "accidents" caused substantial loss of earnings and injury to personal property for which Allendale is obligated to pay. Allendale argues that these incidents do not constitute covered perils under the policy, that National's damages are grossly overstated, and that, even assuming coverage, National used an erroneous standard to measure its losses.

Upon Allendale's refusal to honor National's claim, National filed suit against Allendale in the Superior Court for the County of Santa Clara, State of California, on March 19, 1979. The case was removed on diversity grounds to the United States District Court for the Northern District of California, which in turn, transferred the matter to the District of Connecticut. On January 7, 1982, National amended its complaint and under the present state of the pleadings requests compensatory and punitive damages against Allendale based on causes of action for breach of contract and for breach of the duty of good faith and fair dealing.

Presently pending before the Court is National's motion for a pretrial determination that the law of California and not Connecticut governs the resolution of the disputes between the parties.

I

A threshold question raised by plaintiff's motion is whether in this diversity action the Court must apply Connecticut's or California's conflict of laws rules. This issue merits little discussion. It is settled law that when a case is transferred to another district, the transferee district court must apply the state law that would have governed the case had there been no change of venue. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). Here, the California district court would have applied the substantive law of California, including its choice-of-law rules. *Klaxon v. Stentor Co.,*

313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). This Court, therefore, is required to do the same.

## II

■ Unlike Connecticut, which applies mechanical common law choice-of-law rules, see, e.g., *Grand Sheet Metal Prods. Co. v. Aetna Casualty & Sur. Co.,* 500 F.Supp. 904, 908–909 (D.Conn.1980); *Whitfield v. Empire Mut. Ins. Co.,* 167 Conn. 499, 505–06, 356 A.2d 139, 143 (1975), California employs the "governmental interest analysis" approach in both contract and tort actions. *Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 148 Cal.Rptr. 867, 583 P.2d 721, 729 (1978); *Bernhard v. Harrah's Club,* 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976); *Hurtado v. Superior Court of Sacramento County,* 11 Cal.3d 574, 114 Cal. Rptr. 106, 522 P.2d 666 (1974); *Robert McMullan & Son, Inc. v. United States Fidelity & Guar. Co.,* 103 Cal.App.3d 198, 162 Cal.Rptr. 720 (Ct.App.1980). Under this test, California substantive law controls unless a party litigant invokes the law of a foreign state. *Bernhard,* 16 Cal.3d at 317–18, 128 Cal.Rptr. at 217, 546 P.2d at 721. The Court must then determine whether the forum state and the foreign state each has an interest in applying its laws to the issues in question. 16 Cal.3d at 318–19, 128 Cal.Rptr. at 218, 546 P.2d at 722. If only one state is found to have a legitimate interest in the application of its law and the other state has none, the California courts regard the conflict as "false" and apply the law of the interested state to the issue. *Offshore Rental Co.,* 22 Cal.3d at 163, 148 Cal.Rptr. at 870, 583 P.2d at 724; *Cable v. Sahara Tahoe Corp.,* 93 Cal.App.3d 384, 390–91, 155 Cal.Rptr. 770, 774 (Ct.App. 1979). If, however, it is determined that California and its sister state each has a legitimate but conflicting interest in employing its own law to the issue, then a "true" conflict exists, which is resolved by applying the law of the state whose interest would be more impaired if its laws were not applied. *Offshore Rental Co.,* 22 Cal.3d at

163–65, 148 Cal.Rptr. at 871–72, 583 P.2d at 725–26; *Bernhard,* 16 Cal.3d at 319–20, 128 Cal.Rptr. at 218–19, 546 P.2d at 722–23.

## III

One of the issues isolated by the parties for review under California's conflict approach is whether Connecticut or California law applies to Allendale's affirmative defense that it was not given a notice of loss by National "without unnecessary delay" as prescribed by the notice provision of the policy.

■ Connecticut law provides that non-compliance with the notice provisions of a policy voids coverage, even in the absence of prejudice. *Employers' Liability Assurance Corp. v. Travelers Ins. Co.,* 411 F.2d 862, 866 (2 Cir.1969); *Preferred Accident Ins. Co. v. Castellano,* 148 F.2d 761, 762 (2 Cir.1945); *Kolibczynski v. Aetna Life & Casualty Co.,* 176 Conn. 676, 678–79, 410 A.2d 485, 486–87 (1979); *Lee v. Casualty Co.,* 90 Conn. 202, 205 (1916), 96 A. 952, 953–54. California law differs in that an insurer must prove prejudice in order for a delay to be a valid defense to liability. See, e.g., *Healy Tibbitts Constr. Co. v. Foremost Ins. Co.,* 482 F.Supp. 830, 835 (N.D.Cal. 1979); *Northwestern Title Sec. Co. v. Flack,* 6 Cal.App.3d 134, 141, 85 Cal.Rptr. 693, 696–97 (Ct.App.1970).

■ These rules would appear to involve a conflict between the laws of the two states requiring the Court to determine whether the forum state and the foreign state each has an interest in applying its laws to the issues in question. California has an interest, because National has its principal place of business in California and the insurer conducts insurance business in that state. Furthermore, the insurance contract involved in this case is entitled "Standard Fire Insurance Policy for California." Connecticut, in turn, has an interest in applying its laws, because the insurance policy was issued in part to cover a plant located in Connecticut. In view of the fact that the interests of the concerned states conflict, the Court is faced with a

true conflict, and, therefore, the Court must assess the "comparative impairment" of each state's policies.

At the outset it is important to point out that the two states have expressed almost identical purposes and concerns with respect to the enforcement of notice provisions in insurance policies. Both Connecticut and California recognize that a notice of loss stipulation in an insurance policy is a perfectly proper condition to impose on an insured.

On the one hand, an insurer must have the opportunity, at or near the time of the event, to ascertain the scope of a loss, to investigate effectively the circumstances surrounding the loss, and to determine its obligation to pay for or to defend against the loss. Thus the notice provision, which usually can readily be complied with by the insured, is reasonably necessary for the protection of the insurance company. See, e.g., *Hanover Ins. Co. v. Carroll,* 241 Cal.App.2d 558, 50 Cal.Rptr. 704 (Ct.App.1966); *Valladao v. Fireman's Fund Indem. Co.,* 13 Cal.2d 322, 89 P.2d 643 (1939); *Purefoy v. Pacific Automobile Indem. Exch.,* 5 Cal.2d 81, 53 P.2d 155 (1935); *Hynding v. Home Accident Ins. Co.,* 214 Cal. 743, 7 P.2d 999 (1932); *Arton v. Liberty Mut. Ins. Co.,* 163 Conn. 127, 132, 302 A.2d 284, 288 (1972); *Rochon v. Preferred Accident Ins. Co.,* 118 Conn. 190, 197, 171 A. 429, 432 (1934); *Lee v. Casualty Co.,* 90 Conn. at 206, 96 A. at 954.

On the other hand, the two states appreciate the need to protect an insured from the severe consequences of a forfeiture of a rightful payment, based on technical grounds or on a rote application of contract principles. In balancing the competing interests of an insurer and an insured in the context of a late notice situation, California has established the requirement that an insurer must prove substantial prejudice before it is absolved from liability. See, e.g., *Northwestern Title Sec. Co.,* 6 Cal.App.3d at 140–43, 85 Cal.Rptr. at 696–97; *Campbell v. Allstate Ins. Co.,* 60 Cal.2d 303, 32 Cal. Rptr. 827, 384 P.2d 155 (1963). This rule furnishes the insurer with sufficient protection in the event of a late notice, and, at the

same time, provides a safeguard to an insured to recover on a liability which the insurer has expressly undertaken. See, e.g., *Hanover,* 241 Cal.App.2d at 565–66, 50 Cal. Rptr. at 708–709.

Connecticut has not taken such a direct route in striving to achieve the same end. While framing notice questions in terms of strict compliance with "conditions precedent" in contract, Connecticut courts have fashioned a series of exceptions to a wooden application of contract principles. In addition to the doctrines of waiver and estoppel, see, e.g., *Curran v. Connecticut Indem. Co.,* 127 Conn. 692, 695–96, 20 A.2d 87, 89 (1941), the courts have construed phrases such as "immediate notice" and "prompt notice" in policies as meaning and requiring that notice be given within a reasonable time under the circumstances. See, e.g., *West Haven v. United States Fidelity & Guar. Co.,* 174 Conn. 392, 397, 389 A.2d 741, 745 (1978); *Baker v. Metropolitan Casualty Ins. Co.,* 118 Conn. 147, 149, 171 A. 7, 9 (1934). Moreover, immaterial and insubstantial failures to abide by notice provisions do not constitute a breach. See, e.g., *Curran,* 127 Conn. at 696, 20 A.2d at 89. In this regard, it is significant that the Connecticut courts employ the "test" of prejudice to the insurer in determining whether a failure by the insured is immaterial and insubstantial. See, e.g., *Arton,* 163 Conn. at 133–34, 302 A.2d at 288; *Curran,* 127 Conn. at 696, 20 A.2d at 89. Thus, at least to some degree, Connecticut has rejected allegiance to a rigid enforcement of notice provisions in insurance policies.

Based upon this analysis, the scope of the competing laws, and the relevant facts in this case, the Court is convinced that the law of California should apply to the issue of notice. National is a California-based corporation which entered into a contract for insurance with a company that solicits business in California. The policy under consideration is entitled "Standard Fire Insurance Policy for California." Therefore, California has a strong interest in seeing that the obligations of the parties under the contract are fulfilled. Second,

while the incidents that gave rise to the controversy occurred in Connecticut, that fact is not dispositive of the choice of law issue. *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). The basic dispute revolves about the *consequences* that flow from the incidents, not whether the incidents did or did not take place. To the extent that Connecticut law is deemed more favorable to an insurer and less desirable to an insured under these circumstances, the interest of Connecticut at stake to protect insurers within its borders is minimal, because Allendale neither is incorporated nor has its principal place of business in Connecticut. The record is silent on whether it is even authorized to do business in this state. California, however, does have a decided interest in limiting the scope of defenses available to an insurer that solicits and receives business from a corporation that is housed in that state. Finally, California's case law demonstrates a strong and abiding policy that insurers prove prejudice to escape liability under the notice provision of an insurance contract. See, e.g., *Northwest Title Sec. Co., Hanover Ins. Co.; Hynding.* Connecticut's strict contractual approach, as previously discussed, has been seriously eroded over the years by its judges in order to avoid harsh results. Indeed, in a recent case, a Connecticut Superior Court held that an insurance company must show prejudice from the late notice to be relieved of its responsibility under the policy. On appeal, the Connecticut Supreme Court, reversing on other grounds, did not reach the issue. However, two justices in dissent stressed that no sound reason, in logic or equity, exists for the Connecticut rule and gave compelling arguments for Connecticut to follow the "clear trend of the law" and adopt the prejudice requirement. *Plasticrete Corp. v. American Policyholders Ins. Co.,* —— Conn. —— at —— – ——, 439 A.2d 968 (Sup.Ct.1981).

## IV

Allendale next asserts that, with respect to National's cause of action in tort, a true conflict exists between the law of California and the law of this state. The Court disagrees.

In *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), the California Supreme Court held that the failure by an insurer to deal fairly and in good faith with an insured could give rise to a tort action for breach of an implied covenant of good faith and fair dealing. See also *Jarchow v. Transamerica Title Ins. Co.,* 48 Cal.App.3d 917, 939, 122 Cal.Rptr. 470, 486 (Ct.App.1975) and cases cited therein. Relying on the reasoning in *Gruenberg,* Connecticut courts have ruled that a breach of the implied covenant provides an injured party with a tort action, notwithstanding that the acts complained of may also constitute a breach of contract. *Cindeb Corp. v. Covenant Co.,* 7 Conn.L. Tribune, Feb. 16, 1981, at 16, col. 1 (Super.Ct. Jan. 23, 1981); *Michaels v. Hartford Accident and Indem. Co.,* 6 Conn.L.Tribune, Sept. 22, 1980, at 15, col. 1 (Super.Ct. Aug. 26, 1980); *Karp v. Covenant Ins. Co.,* 5 Conn.L.Tribune, Dec. 3, 1979, at 18, col. 3 (Super.Ct. Nov. 15, 1979); *Grand Sheet Metal Prods. Co. v. Protection Mut. Ins. Co.,* 34 Conn.Sup. 46, 375 A.2d 428 (Super.Ct. 1977).[1]

Allendale's argument that Conn.Gen.Stat. § 38–60 *et seq.,* preempts the cause of action is rejected. That statute provides for an administrative hearing in the public interest for unfair practices in the insurance business. But, as pointed out in *Michaels,* the "hearing would not necessarily provide redress for an individual insured. Moreover, the statute does not state the administrative proceeding is the exclusive remedy." 6 Conn.L.Tribune at 15.

There being no conflict in the laws of the two states, California's law will control on this issue.

---

1. It is true that the Connecticut Supreme Court has not addressed the issue. However, in view of the well-reasoned opinions of the Superior Court cases on the question, there is nothing to suggest that the Connecticut's highest state court would decide otherwise. See, e.g., *Bartolotta v. Liberty Mut. Ins. Co.,* 411 F.2d 115, 118 (2d Cir.1969).

## V

The remaining issue under consideration concerns the appropriate rule governing the award of punitive damages.

 Both Connecticut and California permit, in addition to compensatory damages, the assessment of punitive damages if defendant's conduct is found by the trier to be malicious, vindictive, premeditated or oppressive. See, e.g., *Vandersluis v. Weil,* 176 Conn. 353, 358, 407 A.2d 982, 986 (1978); *Lentine v. McAvoy,* 105 Conn. 528, 531, 136 A. 76, 77–78 (1927); *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 822, 169 Cal.Rptr. 691, 697, 620 P.2d 141, 147 (1979); *Neal v. Farmers Ins. Exchange,* 21 Cal.3d 910, 923, 148 Cal.Rptr. 389, 395–96, 582 P.2d 980, 986–87 (1978).

However, the laws of the two states differ in purpose and scope. California seeks to punish the defendant for and to deter others from reprehensible conduct. Its strong policy and clear rule on the subject is demonstrated by codification of the rule in its Civil Code Section 3294(a) ("the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant") and through its case law. See, e.g., *Bertero v. National Gen. Corp.,* 13 Cal.3d 43, 65, 118 Cal.Rptr. 184–186, 529 P.2d 608, 624 (1974); *Zhadan v. Downtown L.A. Motors,* 66 Cal. App.3d 481, 496, 136 Cal.Rptr. 132, 140 (Ct. App.1976); *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 404–05, 89 Cal. Rptr. 78, 95–96 (1970).

Connecticut in theory recognizes the doctrine of "punitive damages," but in practice the courts have consistently rejected the notion of "punishing" the defendant and grant such damages merely as compensation for plaintiff's actual injuries and losses. See, e.g., *Doroszka v. Lavine,* 111 Conn. 575, 578, 150 A. 692, 692–93 (1930) (the purpose of punitive damages "is not to punish the defendant for his offense but to compensate the plaintiff for his injuries . . . ."); *Hanna v. Sweeney,* 78 Conn. 492, 494, 62 A. 785, 785–86 (1906) (punitive damages are "in fact and effect . . . compensatory . . . ."). See also *Collens v. New Canaan Water Co.,* 155 Conn. 477, 488, 234 A.2d 825, 831–32 (1967).

The consequences that flow from these differences are reflected in the *measure* of damages authorized under the prevailing rules of the two states. Connecticut allows recovery only for expenses of litigation less taxable costs. *Vandersluis,* 176 Conn. at 358, 407 A.2d at 986; *Triangle Sheet Metal Works v. Silver,* 154 Conn. 116, 127, 222 A.2d 220, 225 (1966). See also *LeBlanc v. Spector,* 378 F.Supp. 301, 305 (D.Conn.1973). California has no rigid formula to guide trial courts and juries, but rather employs "a fluid process of adding or subtracting" depending on the degree of reprehensibility of the acts, the effect on the plaintiff, and the wealth of the defendant. *Walker v. Signal Cos., Inc.,* 84 Cal.App.3d 982, 998, 149 Cal.Rptr. 119, 127 (Ct.App.1978). Substantial recoveries are subject only to the general limitation that a grossly disproportionate award raises a presumption that it was the result of passion or prejudice. *Rosener v. Sears Roebuck & Co.,* 110 Cal.App.3d 740, 751–52, 168 Cal.Rptr. 237, 243–44 (Ct.App. 1980); *Weisenburg v. Molina,* 58 Cal.App.3d 478, 490, 129 Cal.Rptr. 813, 820 (Ct.App. 1976).

 It is evident, therefore, that the laws of the concerned states conflict. Furthermore, as the Court has demonstrated, both states have an interest in applying their laws. Yet, upon examining the scope of the competing laws in the context of the facts of this case, California law must prevail. Connecticut, unlike California, seeks to shelter its resident defendants from considerable financial exposure for damages grounded on punishment and those used as an example to others. In the context of this case, however, this interest is minimally applicable. As previously explained Allendale neither is a Connecticut corporation nor has its principal place of business here. It is California that has the paramount interest in view of the scope of its laws. National is based in California and when Allendale negotiated the contract of insurance there, it subjected itself to the laws of that state. Moreover, California is the fo-

rum state and has a significant interest in seeing that the parties to a "Standard Fire Insurance Policy for California" adhere to the obligations of that contract including the measure of the damages on its breach. *Robert McMullan & Son, Inc. v. United States Fidelity and Guar. Co.,* 103 Cal. App.3d 198, 205–06, 162 Cal.Rptr. 720, 723–24 (Ct.App.1980). It is apparent to the Court that it is California's law that would be more significantly impaired were it not applied. The "governmental interest" methodology, therefore, mandates the conclusion that California law apply to the issues at bench.

Accordingly, the law of California will govern the resolution of the issues of the alleged late notice, the duty of good faith and fair dealing, and punitive damages.