EDMUND G. BROWN JR. Attorney General TAYLOR S. CAREY Deputy Attorney General
THE HONORABLE PEDRO NAVA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
Does a vehicle tracking device, such as the LoJack Stolen Vehicle Recovery System or the LoJack Early Warning System, constitute a "theft deterrent device" for purposes of requiring written disclosure when a vehicle is purchased under a conditional sale contract?
 CONCLUSION
A vehicle tracking device, such as the LoJack Stolen Vehicle Recovery System or the LoJack Early Warning System, constitutes a "theft deterrent device" for purposes of requiring written disclosure when a vehicle is purchased under a conditional sale contract. *Page 2 
 ANALYSIS
We are asked to determine whether a vehicle tracking device, such as the LoJack Stolen Vehicle Recovery System or the LoJack Early Warning System, constitutes a "theft deterrent device" within the meaning of Civil Code sections 2981 and 2982.2.[1] Section 2981, subdivision (r), defines a "theft deterrent device" as follows:
 "Theft deterrent device" means the following devices installed by the seller after the motor vehicle is sold:
 (1) A vehicle alarm system.
 (2) A window etch product.
 (3) A body part marking product.
 (4) A steering lock.
 (5) A pedal or ignition lock.
 (6) A fuel or ignition kill switch.
Section 2982.2 requires written disclosure by the seller to the buyer under a conditional sale contract as follows:
 (a) Prior to the execution of a conditional sale contract, the seller shall provide to a buyer, and obtain the buyer's signature on, a written disclosure that sets forth the following information:
 (1)(A) A description and the price of each item sold if the contract includes a charge for the item.
 (B) Subparagraph (A) applies to each item in the following categories:
 (i) A service contract.
 (ii) An insurance product. *Page 3 
 (iii) A debt cancellation agreement.
 (iv) A theft deterrent device.
 (v) A surface protection product.
 (vi) A vehicle contract cancellation option agreement.
 (2) The sum of all of the charges disclosed under subdivision (a), labeled "total."
 (3) The amount that would be calculated under the contract as the regular installment payment if charges for the items disclosed pursuant to subdivision (a) are not included in the contract. The amount disclosed pursuant to this subdivision shall be labeled "Installment Payment EXCLUDING Listed Items."
 (4) The amount that would be calculated under the contract as the regular installment payment if charges for the items disclosed under subdivision (a) are included in the contract. The amount disclosed pursuant to this subdivision shall be labeled "Installment Payment INCLUDING Listed Items."
 (b) The disclosures required under this section shall be in at least 10-point type and shall be contained in a document that is separate from the conditional sale contract and a purchase order.
We conclude that for purposes of these two statutes, a "theft deterrent device" includes a vehicle tracking device.
Preliminarily, we note that sections 2981 and 2982.2 are part of the Rees-Levering Motor Vehicle Sales and Finance Act (§§ 2981-2984.5; "Act"), which the Legislature enacted in 1961 to govern "the provisions of conditional sales contracts for the sale of motor vehicles." (710ps.Cal.Arty.Gen.167, 168 (1988).) The Act is "designed to provide a more comprehensive protection for the unsophisticated motor vehicle consumer" (Hernandez v. Atlantic Finance Co. (1980) 105 Cal.App.3d 65,69, fn. omitted), and to "protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost" (Stasher v. Harger-Haldeman (1962) 58 Cal.2d 23, 29).
In 2005, the Legislature amended the Act by, among other things, adding section 2982.2 to address the practice of "loan packing." (Stats. 2005, ch. 128, § 4.) Loan *Page 4 
packing refers to a sales technique used by sellers to add significant charges to the cost of a vehicle purchased under a conditional sale contract. The 2005 legislation enacted Vehicle Code section 11713.89 (Stats. 2005, ch. 128, § 9) to specifically prohibit loan packing as follows:
 (a) It is unlawful and a violation of this code for the holder of any dealer's license issued under this article to do any of the following:
 (1) Negotiate the terms of a vehicle sale or lease contract and then add charges to the contract for any goods or services without previously disclosing to the consumer the goods and services to be added and obtaining the consumer's consent.
 (2)(A) Inflate the amount of an installment payment or down payment or extend the maturity of a sale or lease contract for the purpose of disguising the actual charges for goods or services to be added by the dealer to the contract.
 (B) For purposes of subparagraph (A), `goods or services' means any type of good or service, including, but not limited to, insurance and service contracts.
As for the vehicle tracking devices in question, we are told that the LoJack Stolen Vehicle Recovery System is an electronic tracking device that is installed in a vehicle in a hidden location. It is activated by the police after they receive a report from the owner that the vehicle has been stolen. The device transmits a radio frequency signal that enables the vehicle to be tracked and recovered. The LoJack Early Warning System is similar, but also allows the vehicle's owner to receive a warning by telephone or email message whenever the vehicle is moved without permission.
With this background in mind, we return to the language of section 2981, subdivision (r), which defines a "theft deterrent device" for purposes of the disclosure requirements of section 2982.2. To understand this provision, we apply well recognized principles of statutory construction. "When interpreting a statute, our primary task is to determine the Legislature's intent. [Citation.]" (Freedom Newspapers,Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821,826.) "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (Dyna-Med, Inc.v. Fair Employment Housing Com. (1987) 43 Cal.3d 1379, 1386-1387.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections *Page 5 
relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (Ibid.) Ultimately, "a practical construction is preferred." (California Correctional PeaceOfficers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133, 1147.)
Applying these principles of construction, we find that the two Lo Jack products in question each qualify as "[a] vehicle alarm system." (§ 2981, subd. (r)(l).) In this context, the word "alarm" commonly means "a sound or signal giving notice of danger or calling attention to some event or condition" or "a device that warns or signals by means of a noise (as a bell or siren) or visual effect (as a flashing light)," or "a notice, warning, or announcement calling attention to a circumstance or event." (Webster's 3d New Internal Diet. (2002) p. 49.)
After the theft of a LoJack equipped vehicle has been reported to the police and the system activated, the device notifies the police of the vehicle's location. The device allows the police to track the vehicle based upon a specially coded radio signal that it emits. The LoJack Early Warning System also signals the vehicle's owner by sending a telephone or email message that the vehicle has been stolen. Thus, these devices send a "signal . . . calling attention to some event or condition."
In these circumstances, the LoJack devices act similarly to two other theft deterrent devices specified in the statute — window etch products and body part marking products. (§ 2981, subd. (r)(2), (r)(3).) Each of these products facilitates the recovery of a vehicle that has been stolen, even though the device has not prevented the theft in the first instance.
Finally, we note that vehicle tracking devices, such as the LoJack systems, serve as "theft deterrent devices" in the sense that they increase the chances of apprehending criminals who steal vehicles, thus helping to deter future vehicle thefts overall. When there is an increase in the unobservable precautions taken in a community, a thief s risk of being caught also increases, thereby deterring criminal activity prospectively. (See Mikos, "Eggshell" Victims, Private Precautions, andthe Societal Benefits of Shifting Crime (2006) 105 Mich. L.Rev. 307; Katyal, Criminal Law in Cyberspace (2001) 149 U.Pa. L.Rev. 1081; Ayres Levitt, Measuring Positive Externalities from Unobservable VictimPrecaution: An Empirical Analysis of Lojack (1998) 113 Q.J. Econ. 43.)
Because these vehicle tracking devices constitute a "theft deterrent device," written disclosures must be provided when a vehicle in which they are installed is purchased under a conditional sales contract. In so construing the language of sections 2981 and 2982.2, we promote the primary purpose of the Act: to protect buyers from abusive and unethical sales practices. (See Hernandez v. Atlantic Finance Co. of Los Angeles,supra, 105 Cal.App.3d at p. 69; DixonMobile Homes, Inc. v. Walters
(1975) 48 Cal.App.3d 964, 972.) *Page 6 
We conclude that a vehicle tracking device, such as the LoJack Stolen Vehicle Recovery System or the LoJack Early Warning System, constitutes a "theft deterrent device" for purposes of requiring written disclosure when a vehicle is purchased under a conditional sale contract.
[1] A11 subsequent references to the Civil Code are by section number only. *Page 1