[No. A029160. First Dist., Div. Five. Sept. 26, 1986.]

FLYER'S BODY SHOP PROFIT SHARING PLAN,
Plaintiff and Respondent, v.
TICOR TITLE INSURANCE COMPANY, Defendant and Appellant.

1150

**COUNSEL**

Robert Knox, Stanford H. Atwood, Jr., Kevin L. Anderson, Peter Uzzi and Atwood, Hurst, Knox & Anderson for Defendant and Appellant.

James F. Matthews and Matthews, Boehm & Hammon for Plaintiff and Respondent.

## OPINION

**LOW, P. J.—** ██ A title insurance company which negligently disburses a client's funds in breach of its fiduciary duty is not liable for punitive damages where the evidence fails to show a conscious disregard for plaintiff's rights. ██ We also hold that it is improper to award attorney fees as damages for the prosecution of a separate tort which is unrelated to the defendant's negligent conduct.

Defendant Ticor Title Insurance Company (Ticor) breached its duty as an escrow holder to plaintiff, Flyer's Body Shop Profit Sharing Plan (Flyer's). The jury awarded plaintiff compensatory damages in the sum of $48,178.08, punitive damages in the sum of $250,000 and attorney fees in the sum of $27,412 which were incurred in a separate action to impose a constructive trust. Ticor appeals from the award of punitive damages and attorney fees. We reverse that part of the judgment.

In March 1981, Flyer Tabata, president of the company, and his wife, Janet, as trustees for Flyer's, placed $50,000 with Terrence Batt, president of American Oak Investments and Home Loans, to be invested in a Lake Tahoe marina. The money was to be loaned for 24 months at an annual rate of 26 percent, which loan was to be secured by a first deed of trust on the marina. Tabata endorsed a $50,000 check to American Oak. However, the owners of the marina decided not to go through with the deal. Without disclosing this fact to the Tabatas, American Oak combined this money with $35,000 from other investors (Belko Electric and George and Corrie Marcellino) for a loan to Willie and Lena Hathorn. The loan was for six months at 24 percent interest and was secured by a deed of trust on the Hathorns' San Jose residence.

Without informing the Tabatas or the other investors, American Oak opened an escrow account with defendant Ticor for the Hathorn loan. American Oak prepared escrow instructions which were not reviewed or signed by the Tabatas or the other investors. A preliminary title report prepared by Ticor on the Hathorn property indicated that it was substantially over-encumbered by three deeds of trust totaling over $191,000; the first and second deeds were in foreclosure and the property taxes owed were delinquent. As a precondition to the close of escrow, the escrow instructions originally prepared by American Oak called for existing liens not to exceed $19,000, which was the amount of the existing second deed of trust. When Ticor informed American Oak that the encumbrances far exceeded this requirement, the loan officer at American Oak simply struck this requirement

and instructed Ticor to record the new deed of trust without regard to the amount of the senior liens.

Without verifying the change in escrow instructions with the Tabatas or the other principals, Ticor closed escrow, recorded the new deed of trust as a third deed of trust, and disbursed the $85,000 loan to the Hathorns, which was used to retire the first deed of trust and bring the second deed of trust current. Ticor delivered the original promissory note to American Oak and paid American Oak's commission from the escrow funds. Ticor received $131 for its services and $238.40 for the title insurance policy. The Hathorns netted $543.26.

American Oak and the Hathorns filed for bankruptcy. The only return on the Tabatas's investment was one check for $1,821.92 issued in June 1981. Although this check referred to the Hathorn loan, the Tabatas were not able to make the connection that American Oak had used their funds for the unauthorized loan. The Hathorn property was subsequently sold at a foreclosure sale. William Jury, president of plaintiff's cobeneficiary, Belko Electric, convinced plaintiff not to bid on the property and that he would not seek an advantage over him. However, for his own account, Jury purchased the property. This was the subject of a separate action to impose a constructive trust.

Flyer's sued Ticor, alleging conversion, negligence and breach of fiduciary duty. It also sued Belko Electric and Jury, alleging fraud and breach of fiduciary duty of a cobeneficiary. The jury returned special verdicts in favor of plaintiff, finding that Ticor owed Flyer's a fiduciary duty as an escrow agent, that Ticor acted negligently and breached this duty by opening the escrow for the Hathorn loan and dispersing the funds without first obtaining instructions from the Tabatas as principals. The court also required Ticor to pay plaintiff's attorney fees as damages which were incurred in bringing suit against Belko Electric and Jury.

I

Ticor concedes its liability to plaintiff for breach of its duties as an escrow agent in permitting the Hathorn loan transaction to be completed. Ticor challenges the award of punitive damages on the grounds that there was no malice involved; i.e., there was no showing of an intentional disregard of plaintiff's interests. We agree.

 The jury was instructed that they may award punitive damages upon finding defendant was guilty of "oppression, fraud or malice . . . ." Malice

was defined as "conduct which is intended by the defendant . . . to cause injury to the plaintiff or carried on by the defendant . . . with a conscious disregard for the rights or safety of others." "A person acts with conscious disregard of the rights or safety of others when he is aware of the probable dangerous consequences of his conduct and willfully and deliberately fails to avoid those consequences." This is a correct statement of the law.

In support of the claim for punitive damages, plaintiff argued that it was against accepted escrow policy to act on the agent's instructions without getting prior approval from the principals, and that this was especially reckless in light of the investment losses that reportedly occurred industry wide in the 1970's and which were allegedly due in part to the failure of real estate escrow holders to follow established escrow procedures.

██ However, a breach of a fiduciary duty alone without malice, fraud or oppression does not permit an award of punitive damages. (*Delos* v. *Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 656-657 [155 Cal.Rptr. 843].) ██ The wrongdoer "'must act with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights. [Citations.]'" (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922 [148 Cal.Rptr. 389, 582 P.2d 980].) Punitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy. ██ The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. Unhappily, as a society, we must tolerate without added retribution these all too common lapses in ourselves. ██ Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate. ██ The jury's decision to award punitive damages is entitled to great weight, but we must view the entire record to see if there is substantial evidence from which the jury could conclude that the acts of defendant reached the level of outrage and reprehensibility to justify the award. (See *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821 [169 Cal.Rptr. 691, 620 P.2d 141]; *Neal* v. *Farmers Ins. Exchange, supra,* at pp. 922-923.)

To be sure, the escrow procedures relied on by plaintiff were designed to act as a safeguard against unauthorized investments. ██ However, "'[s]omething more than the mere commission of a tort is always required for punitive damages . . . .' [Citation.]" (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 894-895 [157 Cal.Rptr. 693, 598 P.2d 854].) ██ The failure to follow these established procedures is a breach of the fiduciary duty and may even amount to recklessness or gross negligence.

But to establish malice, it is not sufficient to show only that the defendant's conduct was negligent, grossly negligent or even reckless. (*G. D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22, 31-32 [122 Cal.Rptr. 218].) There must be evidence that defendant acted with knowledge of the probable dangerous consequences to plaintiff's interests and deliberately failed to avoid these consequences. (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158 [181 Cal.Rptr. 784, 642 P.2d 1305]; *Taylor* v. *Superior Court, supra,* 24 Cal.3d at pp. 895-896.)

In *Taylor* and *Peterson,* the court allowed plaintiffs to plead allegations of punitive damages against the drunk driver defendants because they were expected to know the probable dangerous consequences of their actions. Defendant Ticor cannot be said to know that the acceptance of unsigned escrow instructions will set off a chain of unauthorized and imprudent investments. The general allegation that during the preceding years investors lost millions of dollars in real estate syndications and second deeds of trust does not put the defendant on notice of any probable danger to plaintiff's investment in this particular case. Defendant had dealt with American Oak for a number of years. There was no evidence that American Oak was insolvent or that it was defrauding its investors; defendant received no complaints from investors about American Oak. In fact, plaintiff voluntarily dismissed a fourth cause of action against Ticor charging conspiracy to defraud. While defendant acted carelessly in failing to obtain the Tabatas' signatures on the escrow instructions, this act did not constitute a conscious disregard of plaintiff's interests. While we certainly do not condone Ticor's actions, we hold that the conduct is not sufficiently outrageous, i.e., not marked by fraud, evil motive or extreme indifference, to warrant the imposition of exemplary damages. Based on this record, we find insufficient evidence to award punitive damages.

II

The trial court awarded plaintiff damages against Ticor in the amount of $27,412 for attorney fees incurred in suing Belko Electric and Jury to impose a constructive trust for its pro rata share of the proceeds from the foreclosure sale of the Hathorn house. The award was based on the "tort of another" exception to the general rule that each party pay his own attorney fees. (Code Civ. Proc., § 1021.) Under this exception, a plaintiff is entitled to attorney fees as damages "if he is required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant. (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620-621 [30 Cal.Rptr. 821, 381 P.2d 645].)" (*Gray* v. *Don*

*Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].)

In awarding damages, the trial court relied on the *Gray* and *Moe* decisions. (*Gray, supra,* 35 Cal.3d 498; *Moe* v. *Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289 [98 Cal.Rptr. 547].) In *Gray,* the real estate agent of defendant brokerage firm lied to plaintiff, his client, that the sellers had accepted his offer to purchase the property. In reliance on his real estate agent's representations, plaintiff incurred expenses in preparing to take possession of the property. When he could not take possession, plaintiff sued the defendant and the sellers for specific performance and fraud. The trial court returned a verdict in favor of the sellers, but found that defendant falsely represented that plaintiff's offer had been accepted and had breached its fiduciary duty to plaintiff to act honestly and deal fairly. It also awarded plaintiff attorney fees as damages on the ground that but for defendant's misrepresentation, plaintiff would not have been compelled to sue the sellers for specific performance. (*Gray* v. *Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 507.)

In *Moe,* plaintiffs successfully sued defendant title companies for failing to pay benefits under a policy of title insurance and for conspiracy to defraud plaintiffs. The title companies intentionally omitted information from the title report indicating that the property securing plaintiffs' loan was in bankruptcy and that it was encumbered with other liens. The plaintiffs unsuccessfully sought to protect their interest in the bankruptcy proceedings. Plaintiffs were awarded attorney fees against defendants which were incurred in participating in the bankruptcy proceedings and in prosecuting the fraud action. Relying on the "tort of another" doctrine, the court found that defendant "title companies had fraudulently and proximately caused respondents to reasonably protect their interests by suing third parties and that respondents were entitled to the reasonable value of the attorney's fees incurred." (*Moe* v. *Transamerica Title Ins. Co., supra,* 21 Cal.App.3d at pp. 302-303.)

In these and the other cases cited by plaintiff, attorney fees were recoverable when they were incurred in actions against either party to the escrow or the beneficiaries of loaned funds. Plaintiff's decision to sue Belko Electric and Jury on a constructive trust theory was unrelated to the initial wrongdoing of the escrow company. The action to impose a constructive trust on the property sold at the foreclosure sale was not the natural and proximate consequence of Ticor's negligence. Jury's breach of his fiduciary duty as a cobeneficiary in persuading plaintiff not to bid on the Hathorn property at the foreclosure sale was independent of and not causally related

to Ticor's negligence in failing to verify the escrow instructions. (See *Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at pp. 620-621.)

In *Prentice,* plaintiff sellers were awarded compensatory damages against defendant escrow holder, whom the court found was negligent in improperly allowing escrow to close on the sale of real property. The court awarded plaintiff attorney fees as damages which were incurred in an action to quiet title against the buyer of the property and the holder of the first deed of trust. The Supreme Court held that attorney fees were properly awarded as damages because the "natural and proximate consequence of defendant's negligence was to require plaintiffs to file an action seeking to quiet their title against claims by either the Hortons [the buyers] or Neal [the senior lien holder]." (*Id.,* at p. 621.) While it is true that plaintiff became a cobeneficiary with Belko Electric and Jury only through Ticor's negligence, the connection between Jury's subsequent separate breach of fiduciary duty and Ticor's negligence is too attenuated to be a proximate result.

Relying on *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] and Civil Code section 3336, plaintiff argues that attorney fees are properly awarded as damages in a successful action for conversion. First, we note that plaintiff did not argue this ground in the trial court and, of course, it cannot be argued for the first time on appeal. In any event, there is no merit to the argument.

In *Brandt,* petitioner recovered compensatory and punitive damages against real party in interest disability insurer for bad faith failure to pay policy benefits. The petitioner sued and prevailed on causes of action for conversion, breach of the covenant of good faith and fair dealing and violation of statutory unfair claims practices. As part of the damages awarded for the bad faith and unfair claims practices verdicts, petitioner was awarded attorney fees incurred in prosecuting the breach of contract action. Relying on the *Prentice* rationale, the Court held that "[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort. [Citation.]" (*Brandt* v. *Superior Court, supra,* 37 Cal.3d at p. 817.)

In an attempt to apply this reasoning to the instant matter, plaintiff contends that it should receive attorney fees incurred in chasing the funds wrongfully converted by Ticor. To make the analogy complete, there would have to be a finding that Ticor withheld the funds in bad faith. There was no such finding. In fact, as previously noted, plaintiff voluntarily dismissed

a fourth count of conspiracy to defraud against Ticor. *Brandt* does not hold that a mere act of conversion without evidence of bad faith or malice is sufficient to award attorney fees as damages. Wrongful possession of plaintiff's money does not warrant the imposition of attorney fees as damages. Plaintiff concedes that except for its reading of *Brandt,* no other case has awarded attorney fees for simple conversion. Accordingly, we hold that the award of attorney fees as damages was also improper.

The judgment is reversed insofar as it awarded punitive damages and attorney fees in favor of plaintiff and against defendant. Each side is to bear its costs of appeal.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied October 27, 1986, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied January 15, 1987.