**CONTINENTAL CASUALTY COMPANY, Plaintiff,**

v.

**FIBREBOARD CORPORATION, Defendant.**

**No. C 90 1452 TEH.**

United States District Court, N.D. California.

Feb. 13, 1991.

Rodney L. Eshelman, Dana Stanculescu, Carroll, Burdick & McDonough, San Francisco, Cal., for Continental Cas. Co.

William R. Irwin, Kelly C. Wooster, Jayne Loughry, Brobeck, Phleger & Harrison, San Francisco, Cal., for Fibreboard Corp.

Terry L. Croghan, San Francisco, Cal., Paul J. Bschoor, Tomas McGanney, Richard B. Sypher, Linda E. Meyer, White & Case, New York City, intervention for Pacific Indem. Co.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter comes before the court on the plaintiff's motion for summary judgement. Continental Casualty Company ("Continental"), an insurer of the asbestos manufacturer, Fibreboard Corporation ("Fibreboard"), has brought an action seeking declaratory judgement that it is not obligated to indemnify Fibreboard for punitive damages awarded against Fibreboard in jury trials conducted in West Virginia and Texas. Continental moves for summary judgement on the ground that, as a matter

of public policy, California law prohibits insurance coverage for punitive damage awards.

Fibreboard argues that the laws of West Virginia and Texas, where the punitive damages were awarded, govern this case, and that in those states, insurance of the punitive damages at issue is permitted. In the alternative Fibreboard argues that even if California law is applied, the damages at issue do not constitute "punitive damages" as defined in California law, and that therefore insurance is not prohibited. Fibreboard argues that California's policy is designed to punish and deter specific behavior, and that the behavior here at issue does not fall into that category.

The motion came on for hearing on Monday, October 22, 1990. After careful consideration of the parties' written and oral arguments, it appears to the satisfaction of the court therefrom that the plaintiff's motion should be DENIED.

## BACKGROUND

Fibreboard is a Delaware corporation with its principal place of business in California. From 1928 to 1971 Fibreboard, at its California facilities, manufactured products containing asbestos, which were sold in California and in other states.

In 1957, Fibreboard purchased a liability insurance policy from Continental, an Illinois corporation, for coverage from May 1957 to March 1959. The parties entered into this insurance contract in California, and premiums were paid in California. The policy provides that Continental will pay "all sums which [Fibreboard] shall become obligated to pay by reason or in consequence of legal liability for damage however or wherever created or alleged to have arisen or to have been created, because of bodily injuries ... suffered by any person." The policy does not expressly exclude coverage for punitive damages, and it has no choice of laws provision.

*In re Asbestos* is a consolidated action pending in the West Virginia Circuit Court, Kanawah County, No. 84–C–3321, in which 300 plaintiffs have sued Fibreboard for asbestos-related bodily injury claims. In the first phase, the jury found Fibreboard liable for punitive damages to any plaintiff who subsequently is awarded compensatory damages.

In April of 1990, a Texas jury found Fibreboard liable for punitive damages in *Cimino, et al. v. Raymark Indus., Inc., et al.,* a class action with over 2,300 plaintiffs in the United States District Court for the Eastern District of Texas. Civil Action No. B–85–0546.

Continental now seeks a declaration that it is not required to reimburse Fibreboard for the punitive damages awarded in the West Virginia and Texas actions.

## LEGAL STANDARD

The legal standard in a summary judgement motion is a rule of procedure, not substance, and so under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78–79, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938) is governed by federal law in a diversity action. In Federal district court, pursuant to Rule 56(c), to prevail in a motion for summary judgement, the moving party must establish: (1) that there is "no genuine issue of material fact, and (2) that the moving party is entitled to judgement as a matter of law." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978); Fed. R.Civ.P. 56(c). The moving party must show that no reasonable trier of fact could find other than for the moving party. Schwarzer, *Summary Judgment under the Federal Rules,* 99 F.R.D. 465, 487–88 (1984). All reasonable inferences from the evidence are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could *reasonably* find for [the opposing party]." *Id.* 106 S.Ct. at 2512.

In this action there is no dispute over the facts described above. This matter may properly be resolved on summary judgement.

## ANALYSIS

Continental urges the application of California law to this case, while Fibreboard

argues that we should apply the laws of West Virginia and Texas. The threshold issue is therefore that of the proper choice of laws.[1]

■ In an action brought under diversity jurisdiction, a federal district court applies the choice of law analysis of the state in which it sits. *Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1195 (9th Cir. 1982), citing, *Klaxon Co. v. Stentor Elec.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We are to decide state law issues as would the Supreme Court of our forum state. *C.I.R. v. Estate of Bosch*, 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

■ The California Supreme Court resolves conflict of laws questions through a "governmental interest" analysis, *Reich v. Purcell*, 67 Cal.2d 551, 554, 63 Cal.Rptr. 31, 34, 432 P.2d 727 (1967); *Hurtado v. Superior Court*, 11 Cal.3d 574, 579, 114 Cal. Rptr. 106, 109, 522 P.2d 666, 668–69 (1974) which requires the court "to find the proper law to apply based upon the interests of the litigants and the involved states." *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 583 P.2d 721 (1978).

However, there is no conflict if the same outcome would be reached under the laws of each of the states involved. *Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. at 109, 522 P.2d at 668–69. Therefore, the first question is whether the outcome of this summary judgement motion differs if California law is applied, as opposed to the laws of West Virginia and Texas.

*Insurability of Punitive Damages in California*

*City Products Corp. v. Globe Indemnity Co.*, 88 Cal.App.3d 31, 151 Cal.Rptr. 494 (1979) was the first statement of Califor-

nia's public policy bar against the insurance of punitive damages. The basic rationale for the *City Products* rule was that insurance undermines the punitive and deterrent purposes of punitive damages. Punitive damages are designed to punish especially blameworthy tortfeasors. "[T]he policy of this state with respect to punitive damages would be frustrated by permitting the party against whom they are awarded to pass on the liability to an insurance carrier." Id. at 42, 151 Cal.Rptr. 494. The California Supreme Court adopted the *City Products* rule in *Peterson v. Superior Court*, 31 Cal.3d 147, 181 Cal.Rptr. 784, 642 P.2d 1305 (1982).

The *City Products* court recognized a sharp split among jurisdictions as to the insurability of punitive damages. The Court noted that the jurisdictions which prohibit insurance for punitive damages are those in which punitive damages are allowed for only exceptionally egregious conduct, defined as "fraud, oppression or malice." *City Products*, 88 Cal.App.3d at 41, 151 Cal.Rptr. 494. In such jurisdictions, punitive damages have as their only purpose punishment and deterrence. This purpose would be undermined by insurance. Id.

Jurisdictions which allow punitive damage insurance have a much lower threshold for awarding punitive damages, allowing them for "gross negligence or reckless or wanton conduct." Id. The *City Products* court noted that courts in such jurisdictions have recognized the unfairness to a person "who might well be ruined financially by a judgment for punitive damages as the result of conduct of no more flagrancy than an act of 'gross negligence,' a monetary 'reckless' act, or conduct 'contrary to societal interests.'" Id. at 41, 151 Cal.Rptr.

---

1. In support of its argument that California law governs this case, Continental relies heavily on San Francisco Superior Court Judge Ira Brown's Decision in *Asbestos Insurance Coverage Cases*, Judicial Council Coordination Proceeding No. 1072 (January 24, 1990).

It is clear that Fibreboard did not participate in the portion of the trial in which issues concerning punitive damages were decided. In that phase of the trial, Judge Brown held that none

of the parties had timely invoked the law of another state. Furthermore, Continental and Fibreboard stipulated that "whether or not the policies issued by to Fibreboard provide indemnity coverage for awards of punitive damages shall be deferred and determined on a case-by-case basis later if necessary." Therefore, it is clear that Judge Brown did not reach the issues now before us.

494, quoting *Harrell v. Travelers Indem. Co.*, 279 Or. 199, 567 P.2d 1013, 1021 (1977).

The *City Products* court held that California has the higher threshold for awarding punitive damages and should therefore disallow punitive damage insurance. Id. The court stated:

> Such coverage is valid in jurisdictions where punitive damages are allowed in respect of gross negligence or reckless or wanton conduct. On the other hand, the authorities in jurisdictions where punitive damages are limited to cases involving fraud, oppression or malice have generally invalidated insurance coverage for punitive damages on public policy grounds.
>
> It is clear that California falls into the latter category ... It is also clear the primary purposes of punitive damages awards in this state are those ... "for punishment and deterrence." Id. at 41, 151 Cal.Rptr. 494 (citations omitted).

In *Ford Motor Co. v. Home Ins. Corp.*, 116 Cal.App.3d 374, 172 Cal.Rptr. 59 (1981), (a case involving defects in the design of the Ford Pinto), the court extended the *City Products* rationale to products liability cases. The court recognized the split among jurisdictions, and that the reason for which insurance for punitive damages is disallowed in California is related to California's high threshold for the assessment of punitive damages.

> The rationale underlying the assessment of punitive damages in California, viewed in perspective with the law of other jurisdictions, formed the basis for the *City Products* decision. In California, conduct is sufficiently culpable to warrant assessment of punitive damages *only* if it involves fraud, oppression or malice. Mere unintentional carelessness, characterized as negligence or recklessness, is not sufficient. The purpose of punitive damages is to punish and deter sufficiently culpable conduct ... Id. at 380, 172 Cal.Rptr. 59.
>
> In California, malice is the basis for assessing punitive damages for nonintentional conduct; that is, acts performed

without intent to harm ... [P]unitive damages may be assessed based on a finding that the company has shown a conscious disregard for the person's safety.
Id. at 380–82, 172 Cal.Rptr. 59.

■ In accordance with the above, in order to determine whether the punitive damages awarded by the Texas and West Virginia juries are insurable under California law, we must determine whether the conduct underlying those damages was "sufficiently culpable," Id. at 380, 172 Cal. Rptr. 59, to qualify for punitive damages under California law.

Since the punitive damages at issue in our case were awarded in West Virginia and Texas, we can not assume that they were awarded in accordance the strict California standard for punitive damages. California law prohibits insurance of the damages at issue only if the West Virginia and Texas juries found Fibreboard liable for punitive damages based upon conduct which would warrant an imposition of punitive damages in California, otherwise the conduct at issue would not be of the category which California seeks to deter by a prohibition of insurance. If the Texas and West Virginia juries found Fibreboard liable based upon conduct which would not justify the imposition of punitive damages in California, but which did satisfy the lower threshold for punitive damages existing in Texas and West Virginia, then California public policy would not prohibit insurance of the punitive damages.

*Insurability of the West Virginia Punitive Damages Under California Law*

The Judge in the West Virginia action instructed the jury that they could award punitive damages "where a preponderance of the evidence reveals that such Defendant acted with the intent to cause injury or is guilty of malice, oppression, or wanton, willful, *and* reckless disregard for the rights of others." Excerpts from Trial Transcript, *In re Asbestos*, Exhibit D to Request to Take Judicial Notice at 23–24 (emphasis added). However, the verdict form shows that the jury awarded punitive damages based upon a finding that the

defendant had "acted intentionally, oppressively, willfully, and maliciously or in wanton or reckless disregard for the rights of others in the manufacture or sale of the defective product." Verdict Form, *In re Asbestos,* Exhibit E to Request to take Judicial Notice. We hold that the Verdict Form provides the relevant information for resolution of our case, since the Verdict Form reflects the conduct for which Fibreboard was found liable.

On the basis of the Verdict Form, the jury may have found Fibreboard liable for "intentional," "oppressive," "willful" or "malicious" conduct. It is clear under the standard articulated in *City Products* and *Ford Motor* that such a finding would justify punitive damages in California, and that as such, insurance of punitive damages awarded on such a basis would be disallowed under California law.

However, since the Verdict Form was worded in the alternative, the West Virginia jury may have found Fibreboard liable only for "reckless disregard for the rights of others in the manufacture or sale of the defective product." California courts have held that "[n]onintentional torts may also form the basis for punitive damages when the conduct constitutes conscious disregard of the rights or safety of others ..." *Peterson v. Superior Ct.,* 31 Cal.3d 147, 158, 181 Cal.Rptr. 784 (1982), citing, *Taylor v. Superior Ct.,* 24 Cal.3d 890, 157 Cal.Rptr. 693, 598 P.2d 854 (1979); *G.D. Searle & Co. v. Superior Ct.,* 49 Cal.App.3d 22, 122 Cal.Rptr. 218 (1975); *See also, Ford Motor Co. v. Home Ins., supra,* 116 Cal.App.3d at 382, 172 Cal.Rptr. 59. The California courts have repeatedly stated that mere "recklessness" is not a sufficient basis for the imposition of punitive damages in California. *Ford Motor Co., supra* at 380, 172 Cal.Rptr. 59; *City Products, supra,* 88 Cal. App.3d at 41, 151 Cal.Rptr. 494; *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.,* 185 Cal.App.3d 1149, 1154–55, 230 Cal.Rptr. 276 (1986).

The "conscious disregard" standard adopted in California requires an element of knowledge which is not inherent in merely "reckless disregard." In California

"the plaintiff must establish that the defendant was aware of the probable consequences of his conduct and that he willfully and deliberately failed to avoid those consequences." *Hasson v. Ford Motor Co.,* 32 Cal.3d 388, 402, 185 Cal.Rptr. 654, 650 P.2d 1171 (1982). A finding of "reckless disregard" could be based on behavior which does not meet the California standard for the imposition of punitive damages. Consequently, California public policy would not prohibit insurance of the punitive damages awarded on such a basis. Unfortunately, we are unable to determine from the West Virginia Verdict Form whether the punitive damages were awarded for "reckless disregard," or for "malice," or "oppression."

■ Under California law, "once the insured shows that an event falls within the scope of basic coverage under the policy, the burden is on the insurer to prove a claim is specifically excluded." *Garvey v. State Farm Fire & Casualty Co.,* 48 Cal.3d 395, 406, 257 Cal.Rptr. 292, 770 P.2d 704 (1989). There is no question that the language of the policy at issue provides for insurance of the punitive damages at issue. "All sums" are insured. No language in the policy excludes punitive damage coverage, although the parties were free to include such a provision.

It is therefore Continental's burden to demonstrate that the punitive damages at issue fall within California's public policy exclusion to the insurance of punitive damages. This Continental has not done. Therefore, we hold that under California law, public policy does not prohibit insurance of the punitive damages awarded against Fibreboard by the West Virginia jury.

*Uninsurability of the Texas Punitive Damages under California Law*

■ We must apply a similar analysis to determine whether California law prohibits the insurance of the punitive damages awarded in Texas. The Texas Judge instructed the jury that it could award punitive damages only if it found that Fibreboard had exhibited "such an entire want of care as to establish that the act or

omission in question was the result of actual conscious indifference to the rights, welfare of safety of the persons affected by it." Excerpts from Trial Transcript, *Cimino v. Raymark, et al.*, Exhibit G to Request to Take Judicial Notice at 5557. While the Texas Judge labelled such behavior "gross negligence," which would not support an award of punitive damages in California, it is clear that the behavior he describes would qualify for punitive damages in California. In other words, it is not the fact that the Judge used the term "gross negligence" which controls here, but rather, what he meant by that term. We quote from the jury instruction:

> [G]ross negligence means more than monetary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it....
>
> In other words, to establish gross negligence, plaintiffs must show that defendants knew about the peril but defendants' acts or failure to act showed they didn't care. You must, therefore, explore the defendants' corporate mental attitude ... To determine if a defendant has been grossly negligent, the question is whether in light of all the surrounding circumstances, defendants failed to exercise care or exercise [sic] so slight a degree of care that one could say that the defendants were consciously indifferent to the interests of others ...
>
> A determination of gross negligence against a defendant requires a finding by you that the defendant had actual knowledge of an asbestos-related health risk and made a conscious and deliberate decision to disregard that risk ...

Id. at 5557–60.

It is clear from this instruction that the conduct for which the Texas jury awarded punitive damages would also warrant an award of punitive damages in California. As discussed above, in California, a finding of "conscious disregard of the rights or safety of others ..." *Peterson v. Superior Ct.*, 31 Cal.3d 147, 158, 181 Cal.Rptr. 784

(1982) is basis for an award of punitive damages.

The conduct for which the Ford Motor Company was found liable for punitive damages by a California court in a case involving the Pinto is instructive here. The California appellate court stated: "if a company intentionally proceeds with conduct which will expose a person to a serious potential danger known to the company in order to advance the company's own pecuniary interest, punitive damages may be assessed based on a finding that the company has shown a conscious disregard for the person's safety." *Ford Motor Co. v. Home Ins. Co.*, supra 116 Cal.App.3d at 381–82, 172 Cal.Rptr. 59.

Under the standards articulated in *Peterson* and *Home Ins. Co.*, we hold that in the instant case the conduct for which Fibreboard was found liable by the Texas jury would merit an award of punitive damages in California, and that therefore California public policy prohibits the insurance of the punitive damages awarded against Fibreboard by the Texas court.

*Insurability of Punitive Damages in West Virginia*

 West Virginia has no absolute public policy bar against the insurance of punitive damages awarded in that state. West Virginia allows punitive damages for a much broader range of conduct than does California. West Virginia law prohibits insurance of punitive damages only when they are based upon conduct which meets a threshold level of culpability. The West Virginia Supreme Court has held that:

> [W]e refuse to find that our public policy precludes insurance coverage for punitive damages arising from gross; reckless or wanton negligence. Such action rooted in negligence as distinguished from a purposeful or intentional tort does not in our opinion carry the degree of culpability that should foreclose the right to insurance coverage.

*Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981).

In making the above holding, the West Virginia Supreme Court noted that punitive

damages in West Virginia serve purposes other than punishment and deterrence. The Supreme Court noted that "punitive damages are additional compensation for the egregious conduct that has been inflicted on the injured party," Id., 283 S.E.2d at 233, and that "[t]here does not seem to be any reason to fail to acknowledge that the injured party does benefit from an award of punitive damages. We find nothing in our social or public policy that precludes this consideration when we evaluate the propriety of permitting coverage for punitive damages occasioned by gross, reckless or wanton negligence." Id.; *see also, Harless v. First National Bank*, 169 W.Va. 673, 289 S.E.2d 692, 702 (1982).

The West Virginia Supreme Court has also noted that "punitive damage awards may encourage persons who have suffered only nominal or minimal damages, to sue those who conduct themselves outrageously ... punitive damages also may provide a substitute for personal revenge by the wronged party." *Perry v. Melton*, 299 S.E.2d 8, 13 (1982). The court noted that these purposes, unlike California's exclusive purposes of punishment and deterrence, are not undermined by insurance.

West Virginia's approach focuses far more on the compensation of the injured victim than does California's approach, which looks solely to deterrence and punishment of the tortfeasor and of potential tortfeasors. The West Virginia court stated: "That the punitive damages may be paid by a liability insurer is no reason to deny their recovery. Liability insurance protects persons who have been injured just as it protects an insured." Id. at 13.

Under West Virginia law we must determine whether the conduct for which the West Virginia jury awarded punitive damages against Fibreboard falls into the insurable or the uninsurable category. As explained above, due to the ambiguity of the Verdict Form, we cannot determine whether the West Virginia jury awarded punitive damages on the basis that Fibreboard "acted intentionally, oppressively, willfully, and maliciously or in wanton or reckless disregard for the rights of others in the manufacture or sale of the defective product." Verdict Form, *In re Asbestos*, Exhibit E to Request to take Judicial Notice.

West Virginia law would clearly prohibit insurance coverage for a "purposeful or intentional tort." *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581 (W.Va.S.Ct.1988). However, West Virginia allows insurance coverage for "punitive damages arising from gross, reckless or wanton negligence." *Hensley v. Erie Ins. Co., supra* 283 S.E.2d at 233; *Perry v. Melton, supra* at 12 ("the public policy of this State does not preclude insurance coverage for punitive damages arising from reckless misconduct.")

As discussed above, on the basis of the Verdict form, the jury may have found Fibreboard liable solely for "reckless disregard for the rights of others in the manufacture or sale of the defective product." Such reckless misconduct would not preclude insurance coverage in West Virginia.

West Virginia has adopted a policy under which insurance policies which purport to cover "all sums" are "liberally construed in favor of the policy holder and strictly against the insurer." *Hensley, supra* 283 S.E.2d at 229. In light of this policy, we hold that the burden is on Continental to demonstrate that under West Virginia law, the punitive damages awarded are not insurable. Continental has failed to do this, and therefore, we hold that West Virginia law, like California law, does not prohibit insurance coverage for the punitive damages awarded in West Virginia against Fibreboard. Therefore, there is no "true conflict" in this case between the laws of the State of California, and those of the State of West Virginia.

*Insurability of Punitive Damages in Texas*

■ The law in Texas is similar to that of West Virginia in that punitive damages are allowed for a broader range of conduct than in California. However, Texas is more generous in allowing insurance coverage than are either California or West Virginia.

Texas courts have repeatedly held that punitive damages serve numerous functions in their state, many of which are related to the compensation of the victim rather than to the punishment of the tortfeasor. The Texas Supreme Court has held that punitive damages serve: "to reimburse for losses too remote to be considered as elements of strict compensation;" as an "example for the good of the public and to compensate for inconvenience and attorneys' fees;" and as "compensation to the sufferer, as well as for punishment of the offender." *Hofer v. Lavender*, 679 S.W.2d 470, 474–75 (Tex.S.Ct.1984). These compensatory goals are not undermined by insurance, in fact, they are potentially undermined by a policy against the insurance of punitive damages.

As for the goals of punishment and deterrence served by punitive damages, the Texas courts have held that "[i]t is doubtful whether the denial of insurance coverage for liability against punitive damages actually deters culpable actors ... Whatever deterrence value punitive damages have under Texas law, we see no hindrances to the practical achievement of those objectives under a policy of law that allows for insuring against liability for punitive damages." *American Home Assurance Co. v. Safway Steel Prod.*, 743 S.W.2d 693, 704 (Tex.App.1987).

Since Texas does not see its policy goals as being undermined by punitive damage insurance, the state is reluctant to allow insurers to avoid their contractual obligations to pay for "all sums" for which the insured has become liable. "As long as insurance companies are willing, for a price, to provide protection against liability for punitive damages to companies they deem 'good risks,' and as long as punitive damage liability continues to extend to 'gross negligence,' we see no reason why these contracts should not be enforced." Id. at 705.

In the case underlying the instant action, the Texas jury found Fibreboard liable for "gross negligence," defined as "such an entire want of care to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it ..." Excerpts from Trial Transcript, *Cimino v. Raymark, et al.*, Exhibit G to Request to Take Judicial Notice at 5557. It is clear that Texas law requires "all sums" insurers to pay for such punitive damages.

In *Manriquez v. Mid–Century Ins. Co.*, 779 S.W.2d 482 (Tex.App.1989), an insurer with an "all sums" contract was required to indemnify the insured against whom punitive damages had been awarded for "gross negligence" when that term was defined as an "entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it." Id. at 484.

*American Home Assur. Co. v. Safway Steel Prod., supra,* ("*Safway*") was similar to the instant case. In *Safway*, a football helmet manufacturer had been found "grossly negligent" for failing to warn its customers of "the limitations of the [football] helmet" in which a plaintiff was injured. Punitive damages were awarded. 743 S.W.2d 693, 695. The *Safway* court held that under the "all sums" insurance contract, the insurer was required to pay the punitive damage award. Id. at 705.

It is clear on the basis of the above authorities that Texas law would require Continental to reimburse Fibreboard for the punitive damages awarded by the Texas jury and would certainly not prohibit such insurance. Since Texas law would allow insurance, while California law would prohibit it, we are presented with a true choice of law problem.

*California/Texas Choice of Law Analysis*

 As discussed above, the California Supreme Court resolves conflict of laws questions through a "governmental interest approach," *Reich v. Purcell*, 67 Cal.2d 551, 554, 63 Cal.Rptr. 31, 34, 432 P.2d 727 (1967); *Hurtado v. Superior Court*, 11 Cal.3d 574, 579, 114 Cal.Rptr. 106, 109, 522 P.2d 666, 668–69 (1974), which requires the court "to find the proper law to apply based upon the interests of the litigants and the involved states." *Offshore Rental*

*Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 583 P.2d 721 (1978).

Under California choice of laws analysis, we are to look to the policies underlying each of the conflicting laws, and then are to determine which policy is more significantly impaired by the application of the law of the other state. The law of the more significantly impaired state is to be applied. *Paulo v. Bepex Corp.*, 792 F.2d 894 (9th Cir.1986); *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 320, 128 Cal.Rptr. 215, 219, 546 P.2d 719, 723 (1976). This has sometimes been called the "comparative impairment" approach. *Bernhard, supra* at 320, 128 Cal.Rptr. 215, 546 P.2d 719. The comparative impairment approach is used in insurance contract cases as well as in tort actions. *Zimmerman v. Allstate Ins. Co.*, 179 Cal.App.3d 840, 224 Cal.Rptr. 917 (1986).

As we have already discussed, the fundamental policy purpose underlying California's rule forbidding insurance of punitive damages is to punish intentional tortfeasors and to deter others from engaging in similarly reprehensible conduct. In California:

> Punitive damages ... are neither equitable nor corrective; punitive damages serve but one purpose—to punish and through punishment, to deter. Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious and to deter him and others from similar extreme conduct.
>
> *Dyna–Med, Inc. v. Fair Employment and Housing Comm'n*, 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323 (1987).

California law assumes that this deterrent effect is diluted if punitive damages are insured. *California State Auto. Ass'n Inter–Ins. Bureau v. Carter*, 164 Cal.App.3d 257, 210 Cal.Rptr. 140 (1985) ("The state's policy with respect to punitive damages would be frustrated by permitting punitive damages to be assessed against an insurance carrier.")

However, this fundamental policy goal is much less compelling when the tort has occurred out of state. While California does have an interest in keeping California corporations from injuring citizens in other states, the interest is much weaker than California's interest in protecting its own citizens through the deterrence of punitive damages. The California appellate court noted in *Zimmerman v. Allstate Ins. Co.*, 179 Cal.App.3d 840, 224 Cal.Rptr. 917 (1986), that California has no interest in extending into other states California policies designed to protect the public. "California has no legitimate interest in the possible deterrent effect of its third party cause of action on conduct in Oklahoma." Id. at 846, 224 Cal.Rptr. 917.

When a California corporation commits a tort in another state, the state in which the tort occurred has the greater interest in establishing policies which it believes best safeguard and promote the interests of the citizens of that state. *Fed. Sav. & Loan Ins. Corp. v. Transamerica Ins.*, 661 F.Supp. 246 (C.D.Cal.1987), addressed the application of California insurance laws when a California insurance company had insured activities which occurred in the State of Missouri. The court stated:

> "California does have an interest in seeing that its resident businesses behave properly. Missouri has much stronger interests here. First, it has a direct interest in regulating the nature and effect of transactions conducted within in its own borders between its citizens and resident insurers. Second, it has an interest in determining whether to allow suits for punitive damages with all their defects— enormous uninsurable liability exposure of businessmen; windfalls to suing individuals ... Third, Missouri surely has an interest in determining how much punishment is enough ..." Id. at 251.

In *Paulo v. Bepex Corp.*, 792 F.2d 894 (9th Cir.1986), an Ontario resident who was seriously injured in Ontario by a meat grinder produced in California sought to apply California tort law, which allowed much greater damages than did Ontario law. The Ninth Circuit applied the governmental interest approach of *Reich v. Pur-*

*cell, supra,* finding that California's primary interest in allowing unlimited tort recovery was to safeguard the interests of its own citizens, not those of Ontario. "[California] has little interest in applying its law to compensate citizens of Ontario." Id. at 896. The *Paulo* court held Ontario law to apply. Ontario's policies, which were designed to compensate victims, but also to protect employers from overly large damages, were held to govern torts occurring inside Ontario involving Ontario victims.

Similarly, in *Ryan v. Clark Equip. Co.,* 268 Cal.App.2d 679, 74 Cal.Rptr. 329 (1969), Oregon law was chosen over Michigan law when an Oregon worker was injured in Oregon by a forklift produced in Michigan. The court held that while Michigan had an interest in deterring companies in its state from committing wrongful conduct, this was outweighed by Oregon's interest in ensuring compensation to its citizens while also protecting businesses operating in its state from excessive damages. *See also, Denham v. Farmers Ins. Co.,* 213 Cal. App.3d 1061, 1066, 262 Cal.Rptr. 146, 148 (1989) ("California has no legitimate interest in the possible deterrent effect of its third party cause of action on conduct in [Nevada]").

California's policy against the insurance of punitive damages is designed to safeguard citizens through punishment and deterrence of tortfeasors. In light of the above cases, the underlying purpose of California's policy is highly attenuated since the harm at issue in the case at bar has occurred in Texas. The Texas courts and legislature have a greater interest than does California in establishing the policies which they believe are in the best interest of Texas citizens.

Texas apparently weighs compensation more highly than punishment. Texas recognizes many compensatory purposes for punitive damages which are not recognized in California, such as compensation for attorney fees and for losses too remote to be considered elements of strict compensation. *Hofer v. Lavender,* 679 S.W.2d 470 (Tex. 1984). *See* discussion, *supra.* Texas has adopted a policy which maximizes the likelihood of full payment of jury awards to Texas citizens, thus promoting those compensatory purposes.

In *Amer. Home Assur. Co. v. Safway Steel Prod.,* 743 S.W.2d 693, 699 (Tex.App. 1987) the Texas Appellate Court addressed a situation in which a Missouri company had sold football helmets in Texas which resulted in injury to a Texas citizen. Punitive damages were awarded against the company. The helmet manufacturer was insured by a New York Insurer under a contract signed in Missouri. The Texas court held its interests to be sufficiently strong to justify application of Texas law. The court stated, "Texas has a policy of regulating insurance contracts payable to inhabitants of Texas." Id. Texas courts weigh this interest strongly even if the Texas citizen will receive full payment with or without insurance. Id. ("Although the compensation of Texas residents is no longer a concern, the fact remains that the instigating event—imposition of punitive damages—occurred in Texas.")

By allowing punitive damages to be insured, Texas also seeks to shield from excessively large punitive damages companies which choose to do business in Texas. *Amer. Home Assur. Co. v. Safway Steel Prod.,* 743 S.W.2d 693, 699 (Tex.App.1987) ("Texas' rule of construction ... indicate[ ] a state interest in protecting the policyholder.") The Texas policy serves the interests of Texas citizens by insuring full payment of jury awards, and also by creating a climate which may be more attractive to businesses which will be insured for punitive damages.

Furthermore, the Texas courts do not believe that insurance negates any deterrent effect of punitive damages. The *Safway* court stated, "Whatever deterrence value punitive damages have under Texas law, we see no hindrances to the practical achievement of those objectives under a policy of law that allows for insuring against liability for punitive damages." Id. at 704.

Since the torts here at issue occurred in Texas, we hold that Texas' interests de-

scribed above outweigh California's attenuated interest in punishing and deterring the wrongful behavior of California manufacturers. Application of the California policy to the instant case would greatly impair the Texas policies outlined above which the Texas courts have defined as in the best interests of their own citizens. This impairment outweighs the impairment to California's relatively weak interest in punishment and deterrence which would result from the application of Texas law.

There is an additional interest which California has in this case. Courts have held that California has an interest in seeing that insurance contracts entered into in California are governed by California law. *Clemco Indus. v. Commercial Union Ins. Co.*, 665 F.Supp. 816, 818 (N.D.Cal.1987) ("California has a very strong interest in regulating insurance contracts entered into with its own residents in its own jurisdiction ...") In the instant case, Fibreboard, a California company, and Continental, and Illinois company, signed and negotiated the contract at issue in California. Payments were made in California. This weighs in favor of applying California law.

*Robert McMullan & Son v. U.S. Fid. & Guar. Co.*, 103 Cal.App.3d 198, 162 Cal. Rptr. 720, 724 (1980) involved a California company which entered into a contract with a Maryland insurer to insure a painting job which was to be performed in Florida. The painting company was sued for defective performance of the Florida job. The California court held California law to govern determination of liability under the contract for payment of damages awarded. The court stated: "California has an interest in seeing that such contract is enforced according to the law where it was made." The court stated that the purpose of the rule was to promote "foreseeability" so that parties negotiating insurance contracts would be able to estimate their potential liabilities. Id. The court noted that it addressed a matter of contract interpretation, which should be governed by the place where the contract was signed, not a matter of tort law, which might be governed by the place of the wrong. Id. 162 Cal.Rptr. at 724.

The instant case differs from that of *McMullan*. Fibreboard and Continental entered into their contract in 1957. The rule prohibiting the insurance of punitive damages was not adopted in California until *City Products* in 1979. Therefore, at the time of negotiating the contract, Continental should have foreseen that they might be required to pay any punitive damages for which Fibreboard might become liable.

The instant case also differs from that of *McMullan* in that Texas has much stronger interests here than did Florida in *McMullan*. Texas' interests are much stronger in the instant case, where hundreds of Texas residents claim to have been physically harmed by asbestos, compared to the situation in *McMullan* where a Florida company merely received a poor paint job. Texas has a very strong interest in adopting the policy which it believes will best safeguard the interests of its injured citizens.

*Shippers Development Co. v. General Ins. Co.*, 274 Cal.App.2d 661, 79 Cal.Rptr. 388 (1969) supports the application of Texas law. In that case a Washington company was insured by a Washington insurer under a contract signed in Washington. A California resident was injured in California while working for the insured company. The court held that the law of California, the place of the injury, would control, rather than the law of Washington. The court stated, "The law of this state [California] in interpreting the policy will govern the extent of the coverage with respect to losses occurring within this state." Id. at 674, 79 Cal.Rptr. 388.

Similarly, in *Haisten v. Grass Valley Med. Reimb.*, 784 F.2d 1392 (9th Cir.1986) a California physician entered into a malpractice contract with a Cayman Islands insurer. The contract was signed in the Cayman Islands and had an express Cayman Islands choice of law provision. A California resident sued the physician for malpractice. Despite the Cayman Islands choice of law provision, the Ninth Circuit, applying California choice of law analysis, held that California's interests in protecting its own

citizens required the application of California law to the case. The court stated, "Protection of California residents from the potential risk of injury thought to be created by insurance and from the unscrupulous practices of insurance companies which profit from premiums from California constitute sufficient interests to apply California law." Id. at 1403. *See also, Denham v. Farmers Ins. Co.,* 213 Cal. App.3d 1061, 262 Cal.Rptr. 146 (1989) (recognizing Nevada's strong interest in applying its insurance laws to accidents occurring within that state); *Strassbergh v. New England Mut. Life Ins. Co.,* 575 F.2d 1262 (9th Cir.1978) (applying California insurance law to interpret an insurance contract signed in New Jersey by a New Jersey resident and a New York insurer when the death at issue occurred in California).

Running counter to California's interest in applying its law of contract interpretation to contracts entered into in California, is Texas' express interest in applying Texas law to insurance contracts "payable to inhabitants of Texas ..." or issued in favor of insureds doing business in Texas. *Safway,* 743 S.W.2d 693, 699 (Tex.App.1987).

In the final analysis, we believe that Texas' interests in this case outweigh those of California, and that Texas interests would be more impaired by the application of California law than would California's interests be impaired by the application of Texas law. Texas has devised a policy designed to insure maximum compensation and likelihood of recovery for citizens of its state, and which also limits the liability of companies which choose to do business in that state. California's interest in punishment and deterrence of California tortfeasors is greatly attenuated since the torts here at issue occurred in Texas.

California's interest in applying its own law to contracts entered into in California is also attenuated in this case. The primary purpose served by such a rule is in promoting foreseeability to satisfy to expectations of the contracting parties. However, in this case, the law at the time of contracting allowed insurance of punitive damages. Under the facts of this case, we recognize "the predominant interest of the state of the place of the wrong." *Hurtado v. Sup. Ct.,* 11 Cal.3d 574, 583, 114 Cal.Rptr. 106, 112, 522 P.2d 666, 672 (1974). Texas has a very strong interest in applying its law and policy to a case in which hundreds of Texas citizens claim to have been injured by the actions of a California corporation.

Therefore, having conducted the governmental interest analysis required to determine choice of laws in California, we determine that Texas law governs the question of the insurability of the punitive damages awarded by the Texas jury against Fibreboard. As discussed above, under Texas law, those punitive damages are insurable.

For the foregoing reasons, and after careful consideration of the papers, legal memoranda, and oral argument offered by the parties; good cause appearing therefor, IT IS HEREBY ORDERED that:

1. The court GRANTS the plaintiff's request for judicial notice of the following documents:

a. Excerpts from testimony of witnesses in *In re Asbestos Insurance Coverage Cases,* Judicial Council Coordination Proceeding No. 1072, San Francisco Superior Court;

b. Excerpts from Judgment, filed on January 24, 1990 in *In re Asbestos Insurance Coverage Cases,* Judicial Council Coordination Proceeding No. 1072, San Francisco Superior Court;

c. Excerpts from Statements of Decision, filed on January 24, 1990 in *In re Asbestos Insurance Coverage Cases,* Judicial Council Coordination Proceeding No. 1072, San Francisco Superior Court;

d. Excerpts from Trial Transcript, *In re Asbestos,* No. 84–C–3321 (W.Va.Cir.Ct., Kanawah County);

e. Jury's Verdict, *Cimino et al. v. Raymark Industries, Inc. et al.,* Civ. No. B–85–0546 (United States Dist. Ct., E.D. Tex.);

f. Excerpts from Trial Transcript, *Cimino et al. v. Raymark Industries, Inc. et al.,* Civ. No. B–85–0546 (United States Dist. Ct., E.D.Tex.).

2. The court finds that under both California and West Virginia law, neither law nor policy prohibits the insurance of the punitive damages awarded against Fibreboard by the West Virginia jury in *In re Asbestos*, No. 84–C–3321 (W.Va.Cir.Ct., Kanawah County);

3. The court finds that Texas law governs the insurability of the punitive damages awarded against Fibreboard by the Texas jury in *Cimino, et al. v. Raymark Industries, Inc., et al.*, Civ. No. B–85–0546 (United States Dist. Ct. E.D.Tex., April 1990);

4. The court finds that neither law nor policy prohibits the insurance of the punitive damages awarded against Fibreboard in *Cimino, supra.*

5. The plaintiff's motion for summary judgement is DENIED;

6. There being no factual controversy relevant to this case, this court finds that as a matter of law, the plaintiff is not entitled to the declaratory relief which it seeks.

IT IS SO ORDERED.